FRANCIS A. FROST, plaintiff in error, *vs.* WILSON ALLEN *et al.*, defendants in error.

An instrument, after reciting that the makers were indebted to F. in an amount named, for which a note had been given, conveyed to him certain personalty, specifying that it was intended that the title should pass. It provided further, that if the note was not paid when due, F. should take possession of said property, and after advertising, sell it, and apply the proceeds to the debt; that if the note was met at maturity, he should reconvey by quit-claim deed:
*Held*, that the instrument was a mortgage, and might be foreclosed as such.

Contracts. Mortgages. Before Judge BUCHANAN. Troup Superior Court. May Term, 1876.

Reported in the decision.

FERRELL & LONGLEY, for plaintiff in error.

BIGHAM & WHITAKER, for defendants.

WARNER, Chief Justice.

This was a claim case. It appears from the record that Wilson Allen and Amanda Allen, on the 19th day of February, 1875, executed and delivered to Frost the annexed instrument in writing, which was duly recorded within three months from the date thereof. Frost proceeded to foreclose the paper writing as a mortgage, a *fi. fa.* was issued on the judgment of foreclosure and levied on the property, which was claimed by Amanda Allen. When the claim case was called for trial, the claimant made a motion to dismiss the plaintiff's levy on the mortgage *fi. fa.*, on the ground that the paper writing on which the plaintiff's proceedings were based was not a mortgage. The court sustained the motion and dismissed the levy, whereupon the plaintiff excepted.

The following is the paper writing which the plaintiff foreclosed as a mortgage, to-wit:

"GEORGIA—TROUP COUNTY.

"Be it known, that we, Wilson Allen and Amanda Allen, both of said county, are justly indebted to F. A. Frost in the sum of $684 40, which is evidenced by promissory note bearing even date with these presents. Now, for and in consideration of said sum of $684 40 furnished us the present year by said F. A. Frost in the way of provisions, we hereby sell, transfer and assign to said Frost the following described property, to-wit: One black horse, name Coley; one gray mare, name Kit; one sorrel horse, named Ball; one bay mare, known as the Sea Mare; one two year old mule; one two year old filly; one two year old horse colt; two one year old horse colts; four cows, three heifers, and one yoke oxen; six head of stock cattle and twenty head of sheep; one Studebaker wagon; one grain reaper and fixtures; one gin and condenser. And it is our intention, by this contract, to vest

the title to said property in said Frost in consideration of said indebtedness on our part to said Frost, and we hereby renounce and waive all right to a homestead and exemption in and to said property; and it is further agreed, that if said note is not paid by the first day of November, 1875, then the said Frost is hereby invested with power to take immediate possession of said property, and after advertising the same for ten days in the LaGrange Reporter newspaper, to sell at public outcry, before the court-house door, in the city of La-Grange, said property herein conveyed, for cash, to the highest and best bidder, and after paying off and discharging said note, principal, interest and costs, the balance, if any, should go as a credit upon another note held by said Frost on said Wilson Allen, and secured by mortgage deed on land; but if the said Wilson Allen and Amanda Allen shall well and truly pay off said note by said first day of November, 1875, then the said Frost hereby agrees to give to said Wilson Allen and Amanda Allen a quit-claim title to said property."

Was the foregoing recited instrument a mortgage, and was the plaintiff at liberty to treat it as such and foreclose it as a mortgage under the provisions of our statute? A mortgage in this state is only a security for a debt, and passes no title. It may embrace all property in possession, or to which the mortgagor has the right of possession at the time. No particular form is necessary to constitute a mortgage. It must clearly indicate the creation of a lien, specify the debt to secure which it is given, and the property upon which it is to take effect: Code, sections 1954, 1955. The instrument in question is of an anomalous character, and it is somewhat difficult to classify it according to any well settled legal definition. In our judgment, it has more of the elements of a mortgage than of an absolute conveyance of the property therein named. It was evidently intended to be a security for the payment of the debt due to Frost, and if that debt was paid by the 1st day of November, 1875, Frost was to reconvey the property by a quit-claim title. The title to the property cannot fairly be said to have been vested in Frost

for any other purpose than to authorize him to sell it for the payment of the debt, in the event of its non-payment by the 1st of November, 1875; and the Allens would have been entitled, in a court of equity, to a decree that Frost should reconvey the property by a quit-claim title, on the payment by them of the principal and interest due on the debt, at any time before the property was sold. The court, therefore, erred in dismissing the plaintiff's levy on the ground that the paper writing foreclosed was not a mortgage.

Let the judgment of the court below be reversed.