## McCALL *v.* HERRING.

1. When a plea to an action has been duly and regularly filed, or an amendment thereto allowed and filed, such plea or amendment becomes a part of the record of the case, and, although afterwards a demurrer to the plea as amended is sustained, and the same stricken, if it be sought to review the ruling striking the same, it is not necessary that such plea be set out in the bill of exceptions. It can properly be incorporated as a part of the record in the transcript which is made and certified by the clerk. The motion to dismiss is overruled.

2. In an action in which only the establishment of a special lien on specific property is sought, and no judgment in personam is prayed against the defendant, a plea to the effect that the defendant has been adjudicated a bankrupt presents no defense to the action.

3. The taking of interest at the highest legal rate, in advance, by way of discount on short loans, in the ordinary course of business, is not usurious; but a reservation of interest in advance, in an ordinary transaction of lending and borrowing money, for a period of five years, is usurious when the amount reserved and the amount contracted to be paid aggregate a sum which is in excess of the highest legal rate for the term of the loan.

4. The statements of fact made in the plea, which by the demurrer are admitted to be true, are sufficient to make a good plea of usury. The trial judge, therefore, erred in sustaining a demurrer to this part of the plea, and in directing a verdict for the plaintiff.

Submitted May 1, — Decided August 8, 1902.

Complaint. Before Judge Reid. City court of Atlanta. January 14, 1902.

*O. E. & M. C. Horton,* for plaintiff in error.
*John M. Graham* and *E. M. & G. F. Mitchell,* contra.

LITTLE, J.    Elizabeth S. Herring instituted an action in the city
court of Atlanta against J. K. McCall.    Originally she sought both
to recover a judgment on a promissory note, and also to establish
a lien in her favor against certain land which she alleged had been
conveyed to her, at the time of the execution of the note, to secure
its payment.    By amendment the plaintiff alleged that the defend-
ant had filed a petition in the district court of the United States
for the northern district of Georgia, to be adjudicated a bankrupt,
and thereafter prayed said court to enjoin the plaintiff from prose-
cuting her suit; that such application for injunction resulted in an
order allowing the plaintiff to prosecute her suit for the purpose of
obtaining a special judgment and having her lien fixed against the
property described in the deed, but staying the suit in so far as it
sought to obtain a general judgment against the defendant.    The
plaintiff then struck her prayer for a general judgment, and prayed
only for a special judgment fixing her lien for the amounts alleged
to be due.    The defendant answered, admitting the execution of
the deed, but alleging that the same was void because the note
which it was given to secure was infected with usury.    He also
averred that he had filed his petition in bankruptcy and been ad-
judicated a bankrupt, that the property described in the deed had
been scheduled in his petition in bankruptcy, and that plaintiff's
debt was one against which a discharge in bankruptcy would be
good; and he set up the bankruptcy proceedings as a defense against
the debt.    The averments of the plea in relation to the defense of
usury set out in detail the facts on which the defendant relied to
show that the debt was infected with usury, which will hereafter
·be specifically referred to.    The plaintiff demurred to the answer
and plea, on a number of grounds, among others, that it set forth
no legal defense, and failed to show usury; that it does not appear
by the ·answer that the lender retained, received, or shared in the
$80 retained as commissions; and that those parts of the answer
which set up the bankruptcy of the defendant were insufficient as a
defense to the action, and irrelevant.    A hearing was had on the
demurrer, and the answer of the defendant was stricken; and by di-
rection of the court the jury returned a verdict setting up and es-
tablishing a lien in favor of the plaintiff, on the land described in

the petition, for the amount claimed thereon, together with attorney's fees and interest. The defendant excepted to the ruling of the court in sustaining the demurrer and striking his answer, and also in directing the verdict which was rendered.

1. When the case was called in this court a motion was made to dismiss the writ of error, on two grounds: first, that the plea, having been stricken from the files, is not properly a part of the record and should therefore have been incorporated in the bill of exceptions, and not sent up by the clerk as a part of the transcript of the record; second, that there was no sufficient assignment of error, that the assignments in relation to striking the plea could not be understood without the plea, and the other assignments were not specific, and do not point out the errors complained of. It is sufficient to say, in regard to the second of these grounds of the motion to dismiss, that it is without merit. The trial judge directed a verdict, and the bill of exceptions alleges that the court erred in so doing. This was a sufficient assignment of error to call in question the correctness of such direction; and as we shall presently see that the stricken plea was a part of the record, there is no merit in the complaint that there was no sufficient assignment of error.

We are well aware that it has been ruled, in several other States, that when a plea or answer has been stricken, the effect is to take such plea or answer out of the record; that, in order to be considered by a reviewing court, it must come up in the bill of exceptions; and that sending it up as a part of the record, by the clerk of the trial court, does not make it such. See 2 Cyc. Law & Pr. 1059; Halpern *v.* Spencer, 47 S. W. 637; Pelham *v.* Page, 6 Ark. 535; Harness *v.* Ross, 13 Ind. 530; Fry *v.* Leslie, 87 Va. 269; and cases cited in 3 Cent. Dig. 107, § 2352, under title "Appeal and Error." On the other hand it was ruled in the case of Whiting *v.* Fuller, 22 Ill. 33, that "An affidavit of merits to a plea is a part of the plea, and is preserved in the record without a bill of exceptions. This is the case also, where a plea is stricken from the files." In the case of Abbott *v.* Douglass, 28 Cal. 295, it was ruled that "an answer, notwithstanding an order to strike it out, is still entitled to its place in the judgment roll." In Davis *v.* Honey Lake Water Co. (Cal.), 33 Pac. 270, it was also ruled that "a demurrer, though stricken out, constitutes a part of the judgment roll." If the effect of dismissing a plea on demurrer is to take it

out of the record, the same result would follow in case the petition was dismissed on demurrer; and while perhaps there is no adjudicated case in which this court has been called on to rule the question directly, it has not infrequently recognized a petition dismissed on demurrer as a part of the record; thus, tacitly at least, endorsing the view taken in the Illinois and California cases, cited supra. It seems that the rulings of these courts are founded on the better reasoning. In the case of *Sibley* v. *Mutual Reserve Fund Life Assn.*, 87 *Ga.* 738, it was ruled that "An amendment to the declaration, which was offered at the time of hearing a demurrer to the declaration, and disallowed by the court, is no part of the record, and can only come to the Supreme Court by being set out in the bill of exceptions or annexed to the same as an exhibit duly authenticated." As the reason for this ruling, Chief Justice Bleckley said, in the course of his opinion delivered in that case, that the "amendment did not become a part of the record so as to be authenticated by the clerk's certificate, and its contents are not set out in the bill of exceptions, nor in any copy of it annexed to the bill as an exhibit, or otherwise duly authenticated by the presiding judge. For this reason, although the record as sent up by the clerk is accompanied by what purports to be an amendment without any mark of filing upon it, we do not consider it as properly before us." This ruling is not only sound, but certainly the principle on which it is based does not conflict with that on which the California and Illinois cases were ruled. The amendment in the *Sibley* case, just cited, never became a part of the record of the case; it was offered but not allowed by the judgment of the court; had it been, it would have become a part of the record. Having become such, it is difficult for us to perceive how a subsequent ruling that such plea or amendment sets up no defense to the action has the effect of divesting it of its character as a plea of record. It is, under such circumstances, not physically taken from the files, nor separated from the other pleadings in the case. Having been allowed and filed, the question whether it contains matter good in defense can not divorce it from the record. The motion to dismiss the writ of error must therefore be denied on each of the grounds on which it was predicated.

2. The trial judge did not err in striking, on demurrer, so much of the plea as set up the facts that the defendant had been adjudica-

ted a bankrupt, that the debt sued on was one provable in bankruptcy, and that the property described in the deed, which the plaintiff held as security for her debt, had been placed in his schedule of assets on file in the bankrupt court. These facts did not bar the right of the plaintiff to assert her lien against the land which she held as security for her debt. The plaintiff sought no judgment in personam against the defendant, but only attempted to assert the lien which she had. This she could lawfully have done, even if the defendant had received his discharge in bankruptcy. See *Smith* v. *Zachry*, 115 *Ga.* 722; *Evans* v. *Rounsaville*, Id. 684. Nor was there any error in striking that part of the answer which set up that it was unlawful to enforce the lien as to attorney's fees. Under the contract they became a part of the debt, if the note was placed in the hands of an attorney for collection ; and the deed (unless it was usurious) vested the title in the plaintiff to secure this sum as well as the other sums contracted for. We know of no reason why the amount of attorney's fees could not properly be included in the amount for which the special lien was sought to be set up, since it appears that the plaintiff complied with all the requirements of the act approved December 12, 1900, and the defendant did not pay the debt before the return day of the court to which the suit was brought. *McCall* v. *Walter*, 71 *Ga.* 287.

3, 4. Divested of a great deal of surplusage, so much of the plea as alleges that the security deed was void because the debt it was made to secure was infected with usury, substantially avers the facts to be, that the loan was made through the agent and attorney at law of the plaintiff, who negotiated the loan; that while the defendant contracted to borrow $1,600 and executed a promissory note for that sum, and agreed to pay interest at the rate of seven per cent. per annum on $1,600, yet he in fact only received from the plaintiff, as lender, the sum of $1,520; that plaintiff's agent and attorney, with the knowledge and consent of the plaintiff, retained $80 from the principal sum as commissions for negotiating the loan; that the amount of the commission when added to the interest contracted to be paid exceeds the highest rate of interest allowed by law; that, by retaining the sum of $80 from the principal agreed to be loaned, the lender avoided the necessity of paying commissions to her agent for making the loan, and in this way she was benefited and shared in the commission. The demurrer

raises the contention that the $80 together with the interest contracted to be paid does not make an amount greater than the lawful interest, and that the payment of an eighth of the interest in advance would not render the transaction usurious.   Further, that it does not appear that the plaintiff retained, received, or shared in said sum of $80, but that this sum was paid to an attorney for his services in connection with making the loan; and that, contracted in this manner, the loan is not rendered usurious by the fact that the borrower here pays or is required by the lender to pay attorney's fees for the examination of ,title, preparation of papers, and for other services; and that it does not appear that the services in this instance were not of this character.   In support of the demurrer it is urged by counsel for the defendant in error that, under repeated rulings of this court, a contract providing for the payment of the highest lawful rate of interest in advance is not usurious, and that it has been held that such payments in advance on short loans did not render a transaction usurious; and it is argued that there is no difference in principle between taking interest in advance on short loans, and taking it in advance on a loan made for a number of years.

The contentions raised by the demurrer, and insisted on as reasons sufficient to justify the court in striking the plea, necessarily lead to the determination of the question whether the averments of the plea, when taken to be true, characterize the transaction as a usurious one.   If they do, the court erred in striking the plea, because the deed relied on by the plaintiff as the basis of the establishment of her lien would be void.   If they do not, the court committed no error, and the validity of the security deed is unaffected. In the case of *Clarke* v. *Havard*, 111 *Ga.* 242, Presiding Justice Lumpkin, in the course of a very able opinion which he delivered in that case, and in which he considered the rulings made by this court in a number of cases preceding it, said: "A money-lender can not, in this State, lawfully contract for or reserve any greater rate of interest than 8 per cent. per annum, and the prohibition is just as strong against doing so indirectly as it is against doing so openly and without pretense.   It is now too well settled to admit of doubt, that if the agent of a money-lender, with his knowledge, charges the borrower a commission, it is the same thing in law as if the lender charged it himself.   This is so because he gets a bene-

fit from the agent's services, and because in such cases there is, as to this matter, no separation of principal and agent. The payment of a commission to the lender's agent, being a part of what the borrower expends for the use of the amount he actually receives, is in effect a payment to the principal, if he gives countenance to the exaction of such commission, and is in the nature of interest on the loan. If, then, the commission so paid and the stipulated interest together exceed the lawful interest, the transaction is usurious. These are familiar principles, and should be readily accepted as sound." The principles which this able judge declares to be sound are clearly ruled in the headnotes which precede his opinion, and such ruling obviates the necessity of a review on our part, here, of the various cases which may be found in almost every one of the later volumes which contain the decisions of this court. The rulings made in the *Clarke* case stand on an entirely different principle from other rulings made, where it appeared that the person negotiating the loan was the agent of the borrower and not of the lender. Accepting the rulings made in that case as being sound, our next inquiry, in order to fully meet the demurrer, is, whether when the $80 retained by the agent of the lender is added to the interest contracted to be paid, it appears that the aggregate of these sums is greater than the highest rate of interest allowed by law to be charged. The borrower gave his note for $1,600, and agreed to pay interest thereon at the rate of seven per cent. per annum — $112. The commission retained amounted to $80. The borrower, according to his plea, received $1,520, interest upon which sum at the rate of eight per cent. per annum, the highest allowed by law in this State, is $121.60. This would make the amount of interest to maturity — five years — $608. Any greater sum than $608 received as interest for this time on this amount would be usury. But, according to the averments of the plea, the interest contracted to be paid — seven per cent. on $1,600 for five years — was $560, which added to the $80 retained as commissions aggregates $640 (not including in this calculation any interest on the $80), as interest on the $1,520 received by the borrower. Thus it is clear that the borrower would pay and be liable to pay $32 more than the highest legal rate during the period of the loan for the sum borrowed. And the result is the same if we treat as chargeable to the borrower the $16 which, in one part of

his amended plea, he admitted the plaintiff was entitled to receive from him for preparation of abstract, etc.     These figures are conclusive to our minds that, when the principles ruled in the *Clarke* case, supra, are applied to the facts set out in the plea and by demurrer admitted to be true, the transaction represented by the promissory note, which is the foundation of the action in the present case, was usurious.

Counsel, however, contend that if the $80 paid by the borrower as commissions is to be treated as interest reserved, then the transaction would not be usurious, for the reason that this amount which was deducted from the face of the note must be treated as the payment of interest pro tanto in advance ; that eighty dollars represents one per cent. on the amount contracted to be loaned for the full term, five years ; and that as the balance of the interest contracted to be paid amounts to seven per cent., the whole rate of interest, when so treated, aggregates eight per cent., and is within the lawful limit; and that the payment of one per cent. of interest in advance under these circumstances does not render the transaction usurious. An examination discloses that the adjudicated cases are somewhat in conflict on the question whether a reservation of the highest legal rate of interest in advance renders a loan transaction usurious, but a majority of those which we have had opportunity to consult draw a distinction, in this respect, between what is termed a long and a short loan. Counsel for defendant in error argues that on principle no such distinction exists, and we agree with him.   We are unable to see any reason why on principle the reservation of the highest rate of interest in advance on short-term loans does not render the contract usurious. It is perfectly clear that in pure discount, or the absolute purchase, by one, of the promissory note of another, the laws relating to usury ought not to apply, for the reason that one may give such a price, in the purchase of a promissory note of an individual, as he may see fit, just as he may for a horse, or other article of personal property.   In that case the note put on the market by the maker represents property which the maker wishes to sell; and if one choose in open market to buy it, the price concerns no one except the owner and the purchaser.   Such a transaction is not, however, the loan of money.   But the authorities have gone further in the declaration that certain transactions which they call discount do not render a certain species of loan usuri-

ous.    Mr. Webb, in his treatise on Usury, § 111, declares, on the
authority of a large number of adjudicated cases cited in note 3,
page 126, "That it is not usury to discount commercial paper in
the ordinary course of business is absolutely settled.    This rule of
law arose out of custom, and does not depend upon statute."    Mr.
Tyler, in his work on Usury, p. 298, declares that "the courts uni-
formly hold, at the present day, that the interest for ordinary pa-
per having the usual time to run, such as is the practice by banks,
may be taken in advance, by way of discount, and not subject the
paper to the taint of usury. It is obvious, however, that the length
of time the paper has to run must have a controlling effect upon
this question.   If the note has a short time to run, the interest may
be taken in advance; whereas the time may be so lengthened out
as to make the taking of the interest, in advance, palpably usuri-
ous."    Whether, then, there is, in principle, any difference in such
transactions in taking the highest legal rate on short and long time
loans is not now a question with which we are materially con-
cerned; for undoubtedly, according to the authorities generally, the
proposition that taking the highest rate of interest in advance does
not render the transaction usurious may be considered settled on
short loans.    Indeed this court, in the case of *Mackenzie* v. *Flan-
nery*, 90 *Ga.* 590, ruled that "to take eight per cent. interest in ad-
vance by way of discount on short loans, in the usual and ordinary
course of business, is not usurious."    And in the case of *Union Sav-
ings Bank* v. *Dottenheim*, 107 *Ga.* 614, Mr. Justice Cobb said: "It
is also well settled that a contract providing for the payment of the
highest lawful rate of interest in advance is not usurious; though
many of the courts which recognize this as an established rule ex-
press doubts as to whether upon principle such practice should be
allowed to prevail."

Just where the line is to be drawn, so as to determine what is a
short and what a long term loan, does not seem to have been set-
tled.    The period of one year seems to have been fixed in the case
of Tallman *v.* Trusedell, 3 Wis. 443.    But the rule that interest at
the highest legal rate may be taken in advance on long loans with-
out rendering the contract usurious is not established by the author-
ities generally.    There are a number of cases so ruling, in many of
which the rulings are made on statutes.    Certainly there are no
decisions of this court which so declare, and we are not aware of

any authority which binds us so to rule. While we accept the doctrine almost universally applied to short loans, in the absence of controlling authority we decline to extend that rule in the case of long loans. On principle it can not be done, nor ought it to be, for reasons which are tersely stated by Mr. Webb in his work cited supra,. § 113, in the following language: "Interest is compensation for the *use of money.* If the amount of the interest is deducted in advance, it is plain that the borrower never *uses* the interest so paid. He does not receive the full amount of his loan. He can not use that which he was to receive, unless it is paid to him. He can not employ money kept out of his possession. It renders the borrower no service, performs no purpose, pays no debts, buys no property, satisfies no wants, and accomplishes nothing, as far as the borrower is concerned, for which he should be compelled to pay interest." While the language of Mr. Justice Cobb in the *Dottenheim* case cited above, is very broad, it was not, as we understand it, meant to include interest on long-time loans, but evidently referred to the rule, which seems so generally to prevail, that the highest rate of interest may lawfully be taken in advance on short loans. If it be contended that this language referred to long as well as short loans,. it may be replied that that question was not one which was passed on by the court in that case. If the contention of the defendant in error is sound, then it would lead to this result: If a loan of $500 were made for a term of five years at the rate of eight per cent. per annum, then at the time of making the loan the lender could reserve the interest for the whole period, and give to the borrower only $300 in satisfaction of his contract; if such a loan were made for ten years, the law would be fully met by the lender handing to the borrower $100 and accepting his obligation to pay him $500 at the end of the period; if it were made for fifteen years,. instead of the borrower receiving anything from the lender, the former would not only get nothing but would pay the lender $100 for the privilege of executing to him his promissory note. The argument would not be dignified by pursuing the subject further. It is all-sufficient to say that such absurd results can not be accomplished consistently with law or reason; and to state such conclusions as the legitimate outgrowth of a principle is to stamp the principle as unsound. In our opinion, the answer in the present case averred facts which when taken as true rendered the transaction be-

tween the parties an usurious one, and the court erred in sustaining the demurrer to that part of the answer setting forth these facts.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*