PATTON *et al.*, executors, *v.* BANK OF LAFAYETTE, and
*vice versa.*

1. An unverified plea of non est factum filed at the appearance term may be amended at the trial by allowing the defendant to swear to its averments. It is also proper at the trial term to allow an amendment to a plea to meet objections which have been pointed out by special demurrer.
2. In a suit by a corporation against an executor, the agent of the corporation is not incompetent to testify to his opinion as to the genuineness of the signature of the defendant's testator, his opinion being given as an expert and being based upon a comparison of the signature with other writings proved to be genuine.
3. In an issue of usury, where a sum of money apparently in excess of the legal rate of interest was retained by the lender, it is competent for a witness to testify that part of the same was received in payment of an independent claim, and not reserved as interest upon the loan.
4. The taking of interest for a portion of a year, computed on the principle that a year consists of 360 days, or twelve months of 30 days each, is not usurious, provided this principle is resorted to in good faith as furnishing an easy and practical mode of computation, and not as a cover for usury. Prior to the act of August 7, 1903, abolishing grace, in taking interest in advance on discounting a negotiable note payable at a chartered bank it was lawful to include the three days of grace in the computation.
5. Where the execution of a note is denied by a plea of non est factum, the note will not be received in evidence until some extrinsic evidence of its execution has been submitted. Slight evidence is sufficient to lay the foundation for its admission, but its sufficiency is for determination by the court. While it would have been better to have omitted any instruction embodying this rule of practice, the charge given does not require a new trial.
6. The indirect pecuniary interest of a notary in a note does not render him incompetent to protest it for non-payment. The certificate of protest by a notary affords prima facie evidence of the facts therein recited. A charge pertinently stating these principles is not erroneous, nor is it rendered so by the court's characterization of the protest by the notary as a ministerial act.
7. The rule of court requires that all objections to evidence be urged and insisted upon at once; and after a decision upon one or more grounds, no others afterwards urged shall be heard by the court. Where objections were made to evidence when offered, and overruled, it was in the discretion of the court to refuse to exclude the evidence on a ground not urged to its admission; and this is especially true where the motion to rule out was made pending the argument and was predicated upon a failure to lay the proper foundation for the evidence sought to be excluded.

Argued January 22,—Decided February 19, 1906.

Complaint. Before Judge Henry. Floyd superior court. March 21, 1905.

. This was a suit upon a promissory note, brought by the Bank of LaFayette against the executors of Mrs. Helen A. Nevin, the plaintiff alleging that in the course of its business it had discounted the note for C. Rowell, and was·the holder and owner thereof. The note was for the principal sum of $1,500, was dated October 1, 1902, and was payable 90 days after date to the order of Helen A. Nevin, at the Bank of LaFayette, Ga., with interest at 8 per cent. per annum after maturity. It contained the usual waiver of homestead, was signed by C. Rowell, and purported to have been indorsed by Helen A. Nevin.· Attached to the plaintiff's petition was a copy of a protest of the note for non-payment on January 2, 1903, signed by a notary public. The defendants filed an answer, in which they set up the plea of non est factum, and challenged the sufficiency of the notarial protest, in that it did not appear therefrom when or where the note was presented, nor that notice was given to the indorser, nor that the protest was under seal. They also interposed the defense of usury, alleging that Mrs. Nevin's relation to the note (if any) was that of a mere surety or accommodation indorser; that she had no personal dealings with the plaintiff bank, but that C. Rowell, the maker, negotiated the note with the bank, which had knowledge that she was only a surety; that the bank charged Rowell $40 as interest on the sum of $1,460 for ninety days, without her knowledge or consent, and that her liability was thereby increased, inasmuch as the note contained a waiver of homestead and exemption rights; wherefore she and her estate were, by reason of said usury, released from any and all liability. On the trial (which resulted in a verdict in favor of the plaintiff) the cashier explained that the note sued on was given to the bank by Rowell in renewal of one which had fallen due, and that the bank had charged him a "discount" of 8 per cent. on the face of the new note, amounting to $30, for the ninety-days extension of his pre-existing debt. The witness further testified that the bank received from Rowell this $30, and possibly a protest fee on the other paper, of $2, making in the aggregate $32 paid by him when the note in suit was negotiated; but that only $30 of that amount was received by the bank as interest for the ninety days, and that the payment of the additional $2 was accepted in satis-

faction of the protest fee upon the paper taken up by him. The case comes to this court upon a bill of exceptions sued out by the defendants, in which they except to the overruling of their motion for a new trial; and upon a cross-bill of exceptions in which the plaintiff complains that the court erred in overruling a demurrer to the answer and in allowing an amendment thereto.

*Denny & Harris* and *F. W. Copeland,* for Patton et al.

*J. P. Shattuck* and *McHenry & Maddox,* contra.

EVANS, J. (After stating the facts.) 1. The answer of the defendants, as originally filed, was not sworn to, and for that reason the plaintiff demurred to the plea of non est factum. The demurrer came on to be heard at the trial term, and the court, after permitting the defendants to perfect their plea by verifying the answer under oath, overruled this ground of the demurrer. The defect in the plea being one which was amendable, the court properly allowed the defendants to meet the demurrer by swearing to the averments on which they based this defense. *Ward* v. *Frick Co.,* 95 *Ga.* 804; *Rodgers* v. *Caldwell,* 122 *Ga.* 279. It was likewise proper for the court to permit the defendants, by an appropriate amendment to their answer, to overcome the further objection, urged in the plaintiff's demurrer, that they failed to point out wherein the protest of the note was insufficient to preserve the rights of the holder of the note against the indorser.

2. The witness J. E. Patton testified, that he was the cashier of the plaintiff bank and owned three fifths of its capital stock; that he received the note sued on, signed by the maker and indorsed by Mrs. Helen A. Nevin, as the agent of the bank; that by comparison of the signature of the indorser with other signatures of hers admitted to be genuine, and which were in evidence, he was of the opinion that the signature of Mrs. Nevin on the note was her genuine signature. A motion was made to exclude this evidence, on the ground that Mrs. Nevin was dead at the time of the protest of the note and that the witness was for that reason an incompetent witness to testify as to the genuineness of her signature. The court declined to rule out this testimony. The witness was not incompetent to testify to his opinion as to the genuineness of the signature, his opinion being given as an expert and based upon a comparison of the signature with other writings proved to

be genuine, and he not undertaking to testify concerning any transaction or communication with the deceased. *Cato* v. *Hunt,* 112 *Ga.* 140.

3. The witness Patton was permitted to testify, over the objection of the defendants, that he received with the note sued on $32, and applied $30 of the same to interest and $2 to a protest fee on another transaction. The objection was that this testimony was incompetent until some proof had been introduced of the existence of some other liability besides interest, and that the witness should not be permitted to testify as to any additional liability for a protest fee until proof was properly made of notarial action showing a liability for such fee. Whether or not there was a legal liability for the protest fee of two dollars had no real bearing upon the issue. Where a sum of money apparently in excess of the legal rate of interest was retained by the lender, it is competent for a witness to testify that part of the same was received in payment of an independent claim, and not reserved as interest upon the loan.

4. The method of the computation or casting of interest has been differently pursued in different jurisdictions. In some States it has been held by the courts of last resort that interest calculated and received upon a note upon the principle of 360 days being a year is usurious. As was said in N. Y. Firemen Ins. Co. *v.* Ely, 2 Cow. 707: "The statute of usury speaks of years and not of months. Interest is to be at the rate of seven per cent. per annum; that is, at the rate of seven per cent. for 365 days; for a legal year is 365 days, the legal half of a year 182 days, and the legal quarter 91 days; the law paying no regard to the odd hours." The principle of the New York case just cited was approved and followed in Indiana. Haas *v.* Flint, 8 Blackf. 67. The Supreme Courts of many other States, notably Massachusetts, Louisiana, Virginia, Vermont, North Carolina, Mississippi, and Connecticut, hold that taking interest for a portion of a year, computed on the principle that a year consists of 360 days, or twelve months of 30 days each, is not usurious, provided this principle is resorted to in good faith as furnishing an easy and practicable mode of computation, and not as a cover for usury. Agricultural Bank *v.* Bissell, 12 Pick. 585; Planters Bank *v.* Bass, 2 La. Ann. 430; Parker *v.* Cousins, 2 Gratt. 372; Bank of Burlington *v.* Durkee, 1 Vt. 399; State *v.* Hunter, 1 Dev. 100; Planters Bank *v.* Snodgrass, 4 How. 573; Camp *v.*

Bates, 11 Conn. 487. This latter conclusion is supported by the reasoning of Lord Mansfield in Floyer v. Edwards, 1 Cowper, 112, that it tends greatly to explain a transaction and is of universal usage among banks, merchants, and men of business generally. It is obvious that interest calculated in this manner slightly exceeds the rate per year as fixed by the statute. The taking of this slight excess does not necessarily taint the transaction with usury, as is pointed out by Shaw, C. J., in Agricultural Bank v. Bissell, supra. This distinguished jurist said in that case: "But, as the statute prescribes the rate of interest for *one year,* and so at the same rate for a longer or shorter time, it is obvious that when the interest is to be computed in days or months, it is impossible to follow the prescribed rule precisely, without taking the fraction of a day; and that this is not required is now settled by the whole current of authority. From the impossibility of executing the statute with literal exactness has resulted the necessity of resorting to an execution cy pres, in many cases, where it is intended to conform to the intent and spirit of the statute. So it has been the practice to consider a contract for money payable in months to be payable in calendar months, and to consider a calendar month as the 12th part of a year, and compute interest accordingly, though they are of different lengths. A note given in February at two months will have 59 days to run and pay one per cent. interest, as for the sixth part of a year; but a note given in December at two months will have 62 days to run and pay the same rate of interest. . . The period of 60 days is one sixth of a year, as nearly as can be computed without a fraction, and 3 days is the nearest approximation to the 10th part of a month or the 120th part of a year, without fractions of a day." The soundness of this construction of the usury statute has been practically recognized by this court. *Neal* v. *Brockhan,* 87 *Ga.* 130. If one twelfth of the annual interest may be lawfully exacted for the use of money for the month of February, which in ordinary years embraces only 28 days, then it is clear that the calculation of interest is not necessarily predicated on the basis of a year of 365 days. Our statute fixes the rate of interest per annum, and not per month, and there is no greater reason for construing the statute as being susceptible of equal subdivisions into months of unequal days than for permitting the casting of interest for periods of less than a year on the basis of equal subdivisions

into months of equal days. It is therefore allowable in bona fide transactions, both because of the facility in computation and the impossibility of exact subdivision of 365 days into proportionable parts of months and days, as well as because of the universality of this method of casting interest, to take interest for ninety days, computed on the principle that a year consists of 360 days.

Only one witness testified on the subject of interest reserved, and from his testimony, as appears in the statement of facts, it is manifest that only thirty dollars was taken for interest on fifteen hundred dollars, and there was no intent to take or receive more than the legal rate. Therefore the instruction of the court that "All the evidence relating to an amount of money paid for the use of this money being that $30 was paid in advance at the time of giving this note for interest for 90 days, that being exactly the amount at 8 per cent., I charge you that that would not be usurious, and you need not consider the plea of usury in this case," was not erroneous on the ground that $30 is not the exact interest on a note for $1,500 for 90 days.

Another question is raised by this assignment of error, and that is whether the reservation in advance of the interest for ninety days amounted to the taking of more than the highest legal rate permitted by law, so as to taint the transaction with usury. "Usury is the reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest." Civil Code, § 2877. Eight per cent. is the legal rate if named in the contract. Civil Code, § 2876. "It shall not be lawful for any person, company or corporation to reserve, charge or take for any loan or advance of money, or for forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per centum per annum, either directly or indirectly by way of commission for advances, discount, exchange, or by any contract or contrivance or device whatever." Civil Code, § 2886. To take interest at the highest legal rate in advance on a long loan is palpable usury. The outside authorities are almost unanimous, however, that in short-time loans it is not usury to reserve the interest in advance. Mr. Tyler, in his work on Usury, at page 298, says "the courts uniformly hold at the present day that the interest for ordinary paper having the usual time to run such as is the practice by banks, may be taken in advance,

by way of discount, and not subject the paper to the taint of usury. It is obvious, however, that the time the paper has to run must have a controlling effect upon this question. If the note has a short time to run, the interest may be taken in advance; whereas the time may be so lengthened out as to make the taking of the interest in advance palpably usurious." In three cases decided by this court, —*Mackenzie* v. *Flannery,* 90 *Ga.* 590; *Union Savings Bank* v. *Dottenheim,* 107 *Ga.* 614; *McCall* v. *Herring,* 116 *Ga.* 235,—the rule was stated to be that the reservation of interest in advance on short-time loans would not amount to usury; but in a later case (*Howell* v. *Pennington,* 118 *Ga.* 494) this dictum of these cases was criticised and shown to be obiter. And in the case last cited it was said that it was not necessary to decide the question, so the court would leave it an open one, as it had remained, so far as this court was concerned, up to that time. But whether interest may be reserved in advance on a short-term loan, the record presents facts which demonstrate that no more interest was retained than that allowed by law. The note in suit was negotiable and payable at a chartered bank, and therefore the debtor was entitled to three days of grace. (The transaction occurred before the act of August 7, 1903 (Acts of 1903, p. 84), abolishing days of grace in this State.) As said by Bissell, J., in Savings Bank of New Haven *v.* Bates, 8 Conn. 511: "It is too well settled to admit of dispute that in regard to negotiable notes the days of grace make a part of the original contract. Such a note, payable by the terms of it in 60 days, is in law a note payable in 63 days." A negotiable promissory note payable at a bank does not become due until the last day of grace. *Haug* v. *Riley,* 101 *Ga.* 372. In taking interest in advance on discounting a note, it is lawful to include the three days of grace in the computation. Bank of Utica *v.* Wager, 2 Cow. 712. The interest on $1,500 at 8 per cent. for 90 days and grace is $31; the discount on this amount at the same rate for 90 days and grace is $30.34. The amount actually reserved was less than the bank might legally have taken; hence there was no usury in the transaction, and the court very properly declined to submit this issue to the jury.

5. Exception is taken to the following charge of the court: "When the defendants come in and plead non est factum, that is, that it is not the deed or the act of their testatrix, that casts

primarily upon the plaintiff the burden of establishing prima facie
that Mrs. Nevin did make this indorsement on this note. That
is a question in the first instance that is addressed to the court.
The court, having heard certain evidence relating to the question,
admits this note in evidence before you; but it is still a question of
fact with you whether or not you find that Mrs. Nevin did or did
not indorse this paper." This charge is alleged to be erroneous,
because it conveyed to the jury the impression that the court had
decided that Mrs. Nevin had indorsed this note, but that they
could, if they saw fit, find to the contrary. While we can not com-
mend this charge as being an accurate statement of the law, we do
not think it was harmful to the defendants. When a plea of non-
est factum is filed in a suit on a promissory note, the note is not
admissible in evidence until some proof of its execution has been
submitted. Slight evidence is sufficient to lay the necessary founda-
tion for its admission, the sufficiency of such evidence being a mat-
ter for determination by the court. The trial judge evidently had
this principle in mind when giving the charge excepted to. It
would have been better for him not to have attempted to explain to
the jury the rule of law under which the note was received in evi-
dence, since any explanation on the subject would tend to confuse
the jury, rather than to enlighten them as to the issue of fact they
were called on to decide. *Western & Atlantic Railroad Co.* v.
*Young,* 83 *Ga.* 517-518. But as was said in that case, such a
charge does not necessarily require the grant of a new trial. In
the present case the defendants introduced no evidence whatever,
nor did they undertake to swear to the plea of non est factum from
personal knowledge, but only from information and belief enter-
tained by them in their capacity of legal representatives of their
testatrix.

6. The eighth ground of the motion complains of the following
charge: "I also charge you as a matter of law that notwithstand-
ing Mr. Patton was an officer of the bank and a shareholder in it,
he was authorized to perform these ministerial duties as a notary
public; and I charge you that his certificate is prima facie evidence
of the facts it recites, that is non-payment and such notice being
mailed as required by law. I charge you, that, nothing else ap-
pearing, it becomes a matter of law not to require you to decide
that, but to decide it sharply as a matter of law, and therefore I

give you these things in charge under the law." The assignments of error on this charge are, (1) that the cashier of the plaintiff bank being shown to own three fifths of the capital stock, he was incompetent to protest a paper the title to which was in the bank; (2) that it was not made to appear that the certificate of the notary had been filed in court at the appearance term, or that it had remained there since; (3) that it was not prima facie evidence of any fact recited therein unless it had been so filed and had so remained in court; and (4) that the court erroneously described the notarial protest as a ministerial act, instead of one incident to the exercise of judicial functions. The fact that the notary was a stockholder in the bank and had an indirect pecuniary interest in the note did not render him incompetent to protest it for non-payment. 7 Cyc. 1055, and cit. The certificate of the notary being in evidence, it afforded prima facie evidence of the facts therein recited. *Hobbs* v. *Chemical Nat. Bank,* 97 ·*Ga.* 526. That it may not have been filed in court and there permitted to remain, agreeably to the provisions of the Civil Code, §5235, simply furnished grounds for objecting to its reception in evidence. Having been regularly admitted in evidence, it was proper for the court to tell the jury what effect the law attaches to a notarial certificate of protest. It would seem that a notary is not, under the laws of this State, vested with any judicial powers. Pol. Code, §503. But however this may be, we are unable to perceive how the defendants were prejudiced by the court referring to the protest of a note as a ministerial function.

7. Complaint is made that the court erred in refusing to rule out the protest papers which had been introduced by the plaintiff. The defendants' motion to do so was made after the evidence had closed and pending the argument to the jury, and was based on the ground that it did not appear that the notary's certificate was filed in court at the first term and there permitted to remain until the trial. It appears that when the certificate was offered in evidence, objection to its admission was made on other grounds which the court overruled. His honor directed counsel's attention to the rule of court which provides that all objections to testimony must be urged and insisted upon at once, and, after a decision upon one or more grounds, no others afterwards urged shall be heard by the court (Civil Code, §5675); and after counsel had expressed the

opinion that this rule applied only to motions for a continuance, the judge declined to exclude the evidence, saying: "This being in the concluding argument, and some of the witnesses having gone, I decline to hear the motion." It is doubtless within the discretion of a trial judge to relax the salutary rule of court just referred to, when necessary to prevent a grave injustice which would be brought about by surprise or mistake on the part of one of the litigants (*Brinkley* v. *State*, 54 *Ga.* 374; *Parris* v. *Hightower*, 76 *Ga.* 631); but the present case did not call for the exercise of any such discretionary power. By allowing evidence to be introduced without objection, a party does not lose the right to move, at any time before the case is submitted to the jury, to have the evidence excluded. *Blount* v. *Beall*, 95 *Ga.* 182. But he is not at liberty to practically abrogate the wholesome rule of court which requires that all of his objections must be urged at one and the same time, by making some of his objections when the evidence is offered, and afterwards, under the guise of a motion to rule out the evidence, urging other objections thereto which were not in the first instance even hinted at. Furthermore, a distinction is to be drawn between illegal testimony and secondary evidence or other evidence which is legal in itself because it is of probative value but is inadmissible until the proper foundation for its reception has been laid. Hearsay testimony has no probative force whatsoever (*Eastlick* v. *So. Ry. Co.*, 116 *Ga.* 49), and its only effect is to prejudice the party against whom it is offered. Evidence of a secondary nature, the only objection to which is that it was received without the preliminary foundation for its introduction being first laid, stands upon an altogether different footing; and if admitted without objection, it is to be treated as altogether competent, and the court may properly instruct the jury as to its relevancy and legal weight and effect. *Goodwyn* v. *Goodwyn*, 20 *Ga.* 600, 622. If one of the parties consents to the introduction of the copy of a deed in lieu of the original, he is not at liberty to subsequently insist that the court should withdraw the evidence from the consideration of the jury, the plaintiff having acted upon the assumption that the defendant waived all objection to the character of the proof, and being, perhaps, unable to supply the primary proof. *Norris* v. *Millner*, 20 *Ga.* 563, 565. The plaintiff in this case was, it may be, in some such situation when the motion to rule out the certificate

of the notary was presented. Some of the witnesses had departed; it does not appear whether the notary was or was not still accessible. He had stated, while on the witness stand, that he "protested the note sued on," but was not asked whether he had given the notice of protest, as recited in his certificate, that document having been admitted in evidence after the court had overruled all the objections which the defendants had thought proper to urge against it when it was tendered. Had they then presented the objection that the plaintiff had not shown compliance with the requirements of the statute as to filing the certificate and permitting it to remain in court, and the plaintiff was unable to show that these requirements had been met, the opportunity would have been open to the plaintiff of putting the notary on the stand and bringing out the truth concerning the recitals in his certificate of protest. See *Harrison* v. *Young*, 9 *Ga.* 366. Under the rule of court prescribing when and how objections to evidence must be urged, the defendants had forfeited their right to insist that the certificate should be excluded from the evidence; the plaintiff had a right to act upon the assumption that no further objections to it would be presented, and that it was therefore unnecessary to make any further proof with regard to the dishonor of the note and the giving of notice of protest to the indorser. We can not but conclude, therefore, that the trial judge properly declined to entertain the motion made by the defendants to withdraw the evidence upon which the plaintiff was thus induced to rely after they had exhausted their efforts to prevent its introduction.

From what has been said, it will be perceived that the sole issue of fact upon which the jury could possibly be called on to pass was that raised by the plea of non est factum, as to which the evidence fully warranted a finding in favor of the plaintiff. The court committed no error of law requiring a new trial, and the verdict should be allowed to stand.

*Judgment affirmed. All the Justices concur.*