McCURRY v. HARTWELL BANK.

(District Court, N. D. Georgia.   October 31, 1916.)

No. 21.

1. USURY ☞45—USURIOUS RATE OF INTEREST—WHAT CONSTITUTES.

Where a bank made loans at 8 per cent., the highest legal rate of interest, and then deducted the amount of the interest in advance at the time the loans were made, the transactions were usurious.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 98;  Dec. Dig. ☞45.]

2. USURY ☞80—MORTGAGES—VALIDITY.

Where a debtor conveyed land to a bank to secure enumerated notes, the deed declaring that upon payment it should be null and void and would be canceled, the conveyance was a mortgage, and not a deed, despite the provisions that the bank should cancel the instrument, and hence, though the notes secured bore a usurious rate of interest, the lien of the mortgage is not defeated under Park's Ann. Civ. Code Ga., § 3442, declaring that all titles to property made as part of a usurious contract or to evade the laws against usury are void.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 158–160;  Dec. Dig. ☞80.]

In Equity.   Suit by W. E. McCurry, as trustee in bankruptcy of the estate of E. B. Benson and P. E. Benson, bankrupts, doing business as E. B. Benson & Son, against the Hartwell Bank.   Decree for defendant.

Green & Michael and Horace M. Holden, all of Athens, Ga., for trustee.

J. H. & Parke Skelton, of Hartwell, Ga., and Cobb, Erwin & Rucker, of Athens, Ga., for defendant.

NEWMAN, District Judge.   The trustee in bankruptcy above named brings his petition against the Hartwell Bank on the equity side of the District Court, and shows: That the Hartwell Bank, the defendant, is a banking corporation organized and existing under the laws of the state of Georgia, doing business in Hartwell, Hart county, in said district.   That the firm of E. B. Benson, composed of E. B. Benson and Paul E. Benson, was adjudged bankrupt, and the said E. B. Benson and Paul E. Benson, individually, were adjudged bankrupts, on the 1st day of December, 1915, and thereafter, on the 17th day of December, 1916, at the first meeting of creditors, the plaintiff herein was duly appointed and qualified as trustee in each of said estates.

A petition was filed by said trustee against the Hartwell Bank, among other creditors, praying for leave to sell certain property free of liens. On this petition and the answer of the Hartwell Bank the question is made as follows: On May 14, 1912, E. B. Benson, a member of the bankrupt firm, and one of the individual bankrupts, executed an instrument by which he conveyed to the Hartwell Bank certain real estate in the town of Hartwell described in the instrument, which, after the description of the real estate, has in it this clause:

"The above real estate hereby deeded by said E. B. Benson to the said Hartwell Bank for the purpose of securing the payment of the following notes of the firm of E. B. Benson & Son, of even date with this deed, to wit: One for $2,000.00 due October 20, 1912, one for $2,000.00 due November 1, 1912, one for $2,500.00 due November 15, 1912, with interest from maturity at eight per cent. per annum. Also to secure any further indebtedness of said E. B. Benson & Son or renewals of the notes here mentioned. When these notes and the indebtedness of the said bankrupts to the said Hartwell Bank shall have been fully paid then this deed shall be null and void and shall be canceled by the said Hartwell Bank its heirs and assigns. This deed made expressly for the purpose stated and none other."

On the 19th of February, 1913, E. B. Benson executed another instrument conveying to the Hartwell Bank real estate in the town of Hartwell, to secure a note for $3,500, subject to a prior conveyance to secure a debt of $5,000 to one McMullan, and provided that upon the payment of the note for $3,500 the deed was to be null and void, and was to be canceled by the said Hartwell Bank, and that the deed was given for the purpose of securing the note and none other, with the usual habendum and tenendum clauses.

A third instrument was executed July 28, 1914, by E. B. Benson to the Hartwell Bank, which conveyed certain real estate also in the town of Hartwell, and contained this clause:

"All of the above lots deeded to the Hartwell Bank to further secure the payment of the notes of E. B. Benson & Son to the said bank. When the said E. B. Benson & Son shall have fully paid the said bank then this deed shall be null and void and shall be canceled it having been given for the purpose stated and none other."

Contemporaneously with the execution of these instruments, the Hartwell Bank executed to E. B. Benson certain papers, one dated May 14, 1912, as follows:

"Know all men by these presents: That E. B. Benson has this day made a deed to the Hartwell Bank to the following property, to secure payment of the notes of E. B. Benson & Son, hereinafter described, to wit: In the town of Hartwell, Georgia. (1) The lot whereon P. E. Benson now resides as described in said deed containing one-third (⅓) acres. (2) One lot or tract of land adjoining the lot whereon Jas. Land now resides, fronting Howell street, containing four and ⁴⁰/₁₀₀ (4.40) acres as per deed. (3) One lot No. 4 south of and fronting Benson street adjoining L. L. Stapleton and D. C. Alford, containing two and a half (2½) acres as per deed. (4) Lot B east of lot occupied by P. E. Benson, a part of E. B. Benson's residence lands, containing one-third (⅓) acre, to secure the following notes as above stated: One for $2,000.00 due October 20, 1912, one for $2,000.00 due November 1, 1912, one for $2,500.00 due November 15, 1912, with interest from maturity at 8 per cent. per annum. Upon payment of same said deed to the Hartwell Bank will be null and void by terms of the deed, and said deed is to be canceled by the said Hartwell Bank."

On February 19, 1913, the Hartwell Bank executed the following indorsement upon the above instrument:

"E. B. Benson & Son having paid interest and renewed notes described within due same days of months but in this year, 1913, instead of those within taken up, the deed made May 14, 1912, is to secure the renewals, and upon payment of these new notes or renewals the deed referred to, for property described within is to be canceled."

On February 19, 1913, this paper was executed by the bank:

"Know all men by these presents: That E. B. Benson has this day made a deed to the Hartwell Bank, a second deed, the first and prior one having been made to P. S. McMullan Jan. 4, 1911, to secure him in payment of a note for $5,000.00 from E. B. Benson to him, to the store lot now occupied by E. B. Benson & Son 70x125 feet corner of Elbert and Howell streets, Hartwell, Ga., as described in said deed to the Hartwell Bank securing said bank in the payment of note of E. B. Benson & Son of even date with this (Feb. 19, 1913) due Dec., 1913, for $3,500.00 upon payment of which note the said deed to the Hartwell Bank is to be null and void and shall be canceled by said Bank.

"In addition to said deed E. B. Benson & Son have placed with said bank notes as collateral as per list attached amounting to $1,511.94 all of which shall be returned to said E. B. Benson & Son when their note as above shall have been fully paid."

On July 28, 1914, the bank made the following paper to Benson:

"This is to show that Enoch B. Benson has this day deeded to the Hartwell Bank nine lots Nos. 12, 13, 14, 15, 16, 22, 23, 24 and 27, being the ones deeded to him by Grace Benson Teasley, also a two and $^{15}/_{100}$ (2.15) acre lot east of Cleveland avenue (in lieu of the 2½-acre lot No. 4 Benson St. land released this day by said bank) to further secure payment of the notes of E. B. Benson & Son dated April 14, 1914, and any and all renewals of same or other indebtedness as stated in said deed by him to the said Hartwell bank of this date. It is hereby agreed by the Hartwell Bank that upon payment of said indebtedness by E. B. Benson and Son their heirs or assigns, that said deed together with the others held by the said bank are to be void and shall be canceled by said bank of record."

All the real estate mentioned in these instruments was in the possession of E. B. Benson up to and at the time of the bankruptcy.

[1] The first contention made by the trustee in bankruptcy in this case is that the contract between Benson and the bank was usurious. It seems that it is conceded that the bank, at the time these transactions occurred, charged 8 per cent. interest, and took it out in advance, at the time the loans were made and the notes given. This contention is based on the decision of the Supreme Court of Georgia in Loganville Banking Co. v. Forrester, 143 Ga. 302, 84 S. E. 961, L. R. A. 1915D, 1195. It is there held that the receiving of interest in advance by a bank, at the highest legal rate of interest on a loan, whether it be a short or long term loan, is usurious, and a deed to land given to secure a promissory note for the loan is void on account of the usury. In the opinion of the court, by Judge Evans, the matter is thoroughly discussed and previous decisions of the court referred to. This, among other things, is said:

"It has been stated, in the course of the argument in several of the opinions of this court, that the taking of interest in advance on short term loans in the usual and ordinary course of business is not usurious. Mackenzie v.

Flannery, 90 Ga. 591 [16 S. E. 710]; Union Savings Bank v. Dottenheim, 107 Ga. 606, 614, 34 S. E. 217; McCall v. Herring, 116 Ga. 235, 243 [42 S. E. 468]. On the other hand, it has been strongly intimated that the statutes respecting interest and usury apply alike to short and 'long term loans. Howell v. Pennington, 118 Ga. 494 [45 S. E. 272]. But the observations in those cases are obiter dicta, and the proposition is res integra in this state. Patton v. Bank of Lafayette, 124 Ga. 965 [53 S. E. 664, 5 L. R. A. (N. S.) 592, 4 Ann. Cas. 639]."

In closing the opinion this is said:

"To constitute usury it is essential that there be, at the time the contract is executed, an intent on the part of the lender to take or charge for the use of money a higher rate of interest than that allowed by law. Bellerby v. Goodwyn, 112 Ga. 306 [37 S. E. 376]. If the intent be to take only legal interest, a slight and trifling excess, due to mistake or inadvertence, will not taint the transaction with usury. Rushing v. Willingham, 105 Ga. 166 [31 S. E. 154]. But if the purpose be to take from the money advanced, at the time of the loan, the legal maximum rate of interest, the transaction is an usurious one, and a deed to land given to secure the debt is void by virtue of the statute (Civil Code 1910, § 3442) which declares: 'All titles to property made as a part of an usurious contract, or to evade the laws against usury, are void.' Beach v. Lattner, 101 Ga. 357 [28 S. E. 110]."

The rate of interest charged Benson by the bank was 8 per cent. and the highest rate allowed even by contract in writing in Georgia, and as conceded. That amount was reserved and taken out at the time the loan was made.

Very clearly these transactions between Benson and the bank were usurious; that is conceded by both parties.

[2] We come then to the question, which is the real question in this case, as to whether these instruments were deeds conveying title to the bank, or should be held to have been merely mortgages creating a lien.

Upon this subject the Supreme Court of Georgia decisions at different periods are not in entire accord. In the case of Frost v. Allen, 57 Ga. 326, the instrument in question was held to be a mortgage, although it provided in terms that the title was conveyed and that if the debt was paid the party to whom the conveyance was made should reconvey by a quitclaim deed. Perhaps what was there decided would be better understood from the head note of the case, which is as follows:

"An instrument, after reciting that the makers were indebted to F. in an amount named, for which a note had been given, conveyed to him certain personalty, specifying that it was intended that the title should pass. It provided further that, if the note was not paid when due, F. should take possession of said property, and, after advertising, sell it, and apply the proceeds to the debt; that, if the note was met at maturity, he should reconvey by quitclaim deed. Held, that the instrument was a mortgage, and might be foreclosed as such."

In Pirkle v. Equitable Mortgage Co., 99 Ga. 524, 28 S. E. 34, the court held as follows:

"An instrument purporting on its face to secure a described debt, though in the form of a deed to land, and itself declaring that it was 'given under and by virtue of section [1969] of the Code of Georgia,' does not fall within the provisions of that section unless there was a bond to reconvey the land upon payment of the debt.

"Where such an instrument contains nothing to indicate that there was no bond for a reconveyance, it will be presumed that such a bond was given. If, however, the instrument recites that, upon payment of the debt thereby secured, 'this deed shall be canceled and surrendered in accordance with the act of the General Assembly of Georgia, approved November 12, 1889' (Acts of 1889, p. 118), the presumption would be that there was no bond; but this presumption could be rebutted by proving that, in point of fact, a bond was given.

"It not affirmatively appearing in the present case that there was a bond to reconvey, and the presumption because of a recital in the alleged deed in the words above quoted being to the contrary, and the condition expressed in the recital above indicated to the effect that the instrument shall be void on payment of the debt being equivalent to the defeasance clause usually inserted in mortgages, the court erred in treating the instrument in question as a conveyance passing title and not as a mere mortgage, and consequently erred further in dismissing the plaintiff's petition."

These cases both came before the Supreme Court of Georgia for review in Pitts v. Maier, 115 Ga. 281, 41 S. E. 570, and it was held:

"An instrument, in all respects in the form of a deed passing title, and executed for the purpose of securing the payment of a described debt, is not because containing the clause 'reconveyance of said property to be made upon fulfillment of all the conditions of this instrument,' properly to be treated as a mere mortgage. In so far as the decisions of this court in Frost v. Allen, 57 Ga. 326, and Pirkle v. Mortgage Co., 99 Ga. 524 [28 S. E. 34], conflict with what is here laid down, they are, upon review thereof, overruled."

In Scott v. Hughes, 124 Ga. 1000, 53 S. E. 453, the Supreme Court of Georgia made a decision, in an opinion by Judge Cobb, which is strongly relied upon by counsel for the bank. So much of that decision as is pertinent here is shown by the first headnote, which is as follows:

"A paper in the usual form of a warranty deed, but containing a clause providing that, should the grantor pay to the grantee a stated sum of money by a given date, the instrument 'shall be void, otherwise in full force,' is a mortgage, and not a deed."

Emphasis is given this case because of the importance said to be attached to the use of the words "shall be null and void." It is urged that the use of these words in two of the papers given Benson by the bank and "void" in the other relieves them, as I understand the contention, of the effect that might be otherwise given the agreement to cancel.

It is true that according to the doctrine of all the cases decided by the Supreme Court of the state, especially Buckhalter v. Planters Loan & Savings Banks, 100 Ga. 428, 28 S. E. 236, and Pitts v. Maier, supra, while the title is conveyed by the instrument, or while the instrument has that effect, of placing the title in the grantee, a reconveyance of the property by deed from the vendee in the instrument, or compliance with section 2774 of the Code of 1910 (§ 3309 Park's Code), is necessary. The section of the Code just referred to (3309, Park's Code) is as follows:

"In all cases where property is conveyed to secure a debt, the surrender and cancellation of such deed in the same manner that mortgages are now canceled, on payment of such debt to any person legally authorized to receive the same, shall operate to reconvey the title of said property to the grantor, his heirs, executors, administrators, or assigns, and such cancellation may be en-

tered of record by the clerk of the superior court in the same manner that cancellations of mortgages are now entered."

Compliance with this section, as stated, will have the same legal effect as a reconveyance of the property.

It having been declared in these deeds from Benson to the bank that upon payment of the debt "this deed shall be null and void," this made the instrument simply a mortgage, so that upon the payment of the debt in full all rights of the Hartwell Bank in and to the property would be extinguished, without further action as between the parties. And that "cancellation" would only be what would be necessary in case of a mortgage to have it properly canceled on the records, makes it a very interesting question and probably a somewhat doubtful one, considering all of the decisions of the Supreme Court of the state.

There is a decision by the Georgia Court of Appeals (Owens v. Bridges, 13 Ga. App. 419, 79 S. E. 225), simply a headnote decision, the first headnote of which is as follows:

"A paper stipulating that the maker conveys certain described personalty to secure a debt, and that upon payment of the debt the creditor will reconvey the property to the debtor, is a bill of sale to secure a debt, and not a mortgage. The stipulation for a reconveyance of the property is not a defeasance clause, such as a provision that the instrument would be void upon payment of the debt. Upon payment of the debt a reconveyance can be compelled, but until this is done the instrument remains operative as a bill of sale, even though the debt is paid."

As will be seen, it is held that "the stipulation for a reconveyance of property is not a defeasance clause, such as a provision that the instrument would be void upon the payment of the debt." In the instruments now before the court we have the language that the instruments "shall be null and void" upon the payment of the debt in full, and that the instrument "shall be canceled."

My conclusion, after a thorough examination and consideration of the authorities, is that a provision that the payment of the debt shall render the instrument "null and void" ends the matter so far as the question now before the court is concerned. The additional requirement for the cancellation of the instrument would be no more than might be inserted in an ordinary mortgage without changing its character. That is to say, where a paper is clearly a mortgage and is to be rendered null and void by the payment of the debt, the adding of words providing for its cancellation would be no more than would be necessary to relieve it from its effects against the mortgagor on the records of the county.

The further language used in this paper, although it is called a deed, that it is "made expressly for the purpose stated and none other," viz., to secure Benson's debt to the bank, adds strength to the view that this paper was simply intended to create a lien on the property and no more.

My conclusion is that these papers from Benson to the bank are mortgages in legal effect, and create only a lien on the property in favor of the bank, and not a conveyance of title.

Having this view of the matter, it becomes unnecessary to con-

sider the further contention made here by the bank. It is urged that, even if the papers made by Benson to the bank be considered as conveyances of title, the act of the Legislature of Georgia of August 18, 1916, passed before this case is determined, would relieve the transaction of its usurious effect under the law in existence when the contracts were made. This recent act of the Legislature repeals what was known as section 2892, Code of 1910 (section 3442, Park's Code). That section provides that:

"All titles to property made as a part of an usurious contract, or to evade the laws against usury, are void."

The act repealing this substitutes a provision providing for the forfeiture of the entire interest charged or taken in an usurious contract. It is claimed, on the authority of Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682, even as understood and interpreted by the Supreme Court of Georgia in Maynard v. Marshall, 91 Ga. 840, 18 S. E. 403, that these transactions would not now be held to be void on account of the usury. But, as stated, it is unnecessary to discuss this latter feature.

A decree may be taken in accordance with what has been stated.