356 So.2d 297 (1978)
Elbert Bryan GRIFFIS, III, Appellant,
v.
STATE of Florida, Appellee.
No. 51011.
Supreme Court of Florida.
March 2, 1978.
Kenneth C. Howell of Thompson, Wadsworth, Messer, Turner & Rhodes, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen. and Patti Englander, Asst. Atty. Gen., Tallahassee, for appellee.
KARL, Justice.
We have for review on direct appeal a final judgment ordering forfeiture to the State of a seized motor vehicle. The final judgment, entered by the Circuit Court in and for Suwannee County, expressly upheld the constitutionality of Sections 943.41 through 943.44, Florida Statutes (1975), known as the "Florida Uniform Contraband Transportation Act," thereby vesting jurisdiction in this Court pursuant to Article V, Section 3(b)(1), Florida Constitution.
The appellant and his wife were traveling from Tallahassee to Stuart, Florida, in the appellant's 1973 Dodge pick-up truck when *298 an inspector with the Florida Department of Agriculture and Consumer Services pulled the truck over. The inspector told the appellant's wife, who was driving at that time, that she had failed to stop at the Agricultural Inspection Station and would have to return to the Station. The appellant, his wife and the truck were accompanied back to the Agricultural Inspection Station where a search of both the appellant and his truck took place. During the search, a quantity of controlled substances were found on the appellant and in his truck. As a direct result of the search, charges were brought against the appellant for possession of marijuana and cocaine. The appellant pled nolo contendere to possession of marijuana and received a sentence of one year's probation. The cocaine charge was dismissed by the State.
Subsequently, pursuant to Sections 943.44 and 893.12, Florida Statutes (1975), the State instituted proceedings for forfeiture of appellant's truck, alleging that the vehicle had been used by the appellant for the purpose of transporting cannabis and cocaine in violation of Section 893.13, Florida Statutes (1975). The trial judge entered a show cause order directed to appellant to show why his truck should not be forfeited. In his response, the appellant alleged that his truck had not been used as a part of an illegal drug "operation," that he had not been convicted of a crime which would give rise to seizure of his vehicle as contemplated by Section 943.41, et seq., Florida Statutes (1975), and that Section 943.41, et seq., Florida Statutes (1975), is unconstitutional facially and as applied to the appellant.
In his judgment of forfeiture, the trial judge found that the appellant had been duly convicted of possession of marijuana; that the appellant's conviction was irrelevant as the instant proceeding was civil; that the legality of the seizure was irrelevant since the appellant had pled nolo contendere, not reserving for appeal any question as to the legality of the search; that there was no indication that the appellant's vehicle was being used as part of an illegal drug operation; and that Section 943.41, et seq., Florida Statutes (1975), is constitutional on its face and as applied to the appellant.
On appeal, the appellant argues that forfeiture pursuant to the "Florida Uniform Contraband Transportation Act" requires a showing that the seized vehicle is involved in an ongoing drug trafficking operation and that any interpretation that would allow a forfeiture without evidence of trafficking would render the statutes void as violative of the due process, equal protection and double jeopardy provisions of the Florida and the United States Constitutions. As an additional ground, the appellant argues that the forfeiture is invalid because it is based entirely on illegally seized evidence.
It is axiomatic that this Court will not pass upon the constitutionality of a statute if the case may be effectively disposed of on any other grounds. Singletary v. State, 322 So.2d 551 (Fla. 1975). Williston Highlands Development Corp. v. Hogue, 277 So.2d 260 (Fla. 1973). Thus, if a particular matter in litigation can be determined by statutory construction, this Court will avoid considering the constitutional questions raised. Green v. State ex rel. Phipps, 166 So.2d 585 (Fla. 1964). A fundamental rule of statutory construction is that a statute should be construed in such a manner as to effectuate legislative intent. McKibben v. Mallory, 293 So.2d 48 (Fla. 1974).
Sub judice, a determination of the constitutionality vel non of the questioned statutory provisions is not required in view of legislative intent and the appropriate construction to be given them. Because we find it unnecessary to reach the constitutional issues posed, this does not divest us of jurisdiction to determine the appeal. DeJong v. Pallotto, 239 So.2d 252 (Fla. 1970). P.C. Lissenden Co. v. Board of County Commissioners, 116 So.2d 632 (Fla. 1960).[1]
*299 In construing a statute, this Court is committed to the proposition that a statute should be construed and applied so as to give effect to the evident legislative intent, regardless of whether such construction varies from the statute's literal meaning. Florida Jai Alai, Inc. v. Lake Howell Water and Reclamation District, 274 So.2d 522 (Fla. 1973). Deltona Corp. v. Florida Public Service Commission, 220 So.2d 905 (Fla. 1969). In Beebe et ux. v. Richardson, 156 Fla. 559, 23 So.2d 718, 719 (1945), this Court explained:
"... [W]here the context of a statute taken literally conflicts with a plain legislative intent clearly discernible, the context must yield to the legislative purpose, for otherwise the intent of the lawmakers would be defeated. State v. Beardsley, 84 Fla. 109, 94 So. 660; City of West Palm Beach v. Amos, 100 Fla. 891, 130 So. 710; State v. City of Miami, 101 Fla. 292, 134 So. 608."
Although a literal reading of the language contained in Section 943.42, Florida Statutes (1975), would support the trial court's finding that the statute does not require that a vehicle be used in an illegal drug "operation," this literal reading must give way to the legislative intent in enacting the statute which is plainly to the contrary. To effect the legislative intent, we must construe Sections 943.41, et seq., Florida Statutes (1975), as requiring a showing by the State that the seized vehicle is involved in a drug trafficking operation before forfeiture can be ordered, and the facts before us in the instant cause do not support such a finding. In fact, the trial judge's order ordering forfeiture expressly states that there is no indication that the vehicle in question was being used in an illegal drug "operation."
The language of Sections 943.41 through 943.44, Florida Statutes (1975), was originally contained in Section 893.12, Florida Statutes (1973), enacted by the Legislature as part of Chapter 73-331, Laws of Florida. Chapter 73-331, § 12, Laws of Florida, was entitled the "Florida Comprehensive Drug Abuse Prevention and Control Act" and was a substantial adoption of the major provisions of the Uniform Controlled Substances Act approved by the National Conference of Commissioners of Uniform State Laws in 1970. In 1974, the Legislature enacted Chapter 74-385, § 1, Laws of Florida, excising from Section 893.12, Florida Statutes (1973), those provisions which now constitute Sections 943.41 through 943.44, Florida Statutes (1975), and denominating the excised portions as the "Florida Uniform Contraband Transportation Act." The legislative intent in enacting Chapter 73-331, § 12, Laws of Florida, contained in the introductory language to the act, was inter alia, to achieve "uniformity between the laws of Florida and the laws of the United States" which was "necessary and desirable for effective drug abuse prevention and control." The introductory language also expressed the Legislature's intent "that the State of Florida exercise more authority over manufacture and distribution of dangerous drugs." The express intent of the Legislature was that the Florida forfeiture statute be in uniformity with its federal counterpart.
49 U.S.C. § 781, § 782, are the current federal forfeiture counterparts to the "Florida Uniform Contraband Transportation Act." The "Florida Uniform Contraband Transportation Act" is substantially identical to 49 U.S.C. § 781, § 782. 49 U.S.C. § 781, § 782, were also the federal forfeiture provisions in effect at the time Chapter 73-331, § 12, Laws of Florida, was enacted, having been enacted by Congress in 1939 and subsequently amended in 1950. The intent of Congress in their 1950 amendment *300 of 49 U.S.C. § 781, § 782, was to authorize forfeiture only when the vehicle was engaged in drug trafficking. The congressional committee report that accompanied the amendment leaves no doubt that the congressional intent was not to permit forfeiture for mere possession of a controlled substance but to authorize forfeiture of those vehicles used in trafficking drugs in violation of the Internal Revenue laws. In its report, the committee stated:
"In recent years there has been an increase in the number of narcotics thefts, robberies, and burglaries from drug stores, physicians' offices, and other places from which narcotic drugs are dispensed. The perpetrators of these crimes rely to a large extent on the use of highpowered automobiles to make their escape from the jurisdiction in which the crime took place. When captured, the narcotic drugs thus stolen often are found to bear the required internal-revenue stamps, and consequently seizure and forfeiture of the vehicles used is difficult to obtain, particularly when the drugs have not been sold by the thieves subsequent to the theft. The proposed legislation would attack this problem by permitting the seizure of vessels, vehicles, and aircraft used in connection with the traffic in stolen drugs, when such drugs are carried or transported in interstate commerce, or within any Territory, possession, or the District of Columbia.
"Enforcement officers of the Government have found that one of the best ways to strike at commercialized crime is through the pocketbooks of the criminals who engage in it. Vessels, vehicles, and aircraft may be termed the operating tools of dope peddlers, and often represent major capital investments to criminals whose liquid assets, if any, are frequently not accessible to the Government. Seizure and forfeiture of these means of transportation provide an effective brake on the traffic in narcotic drugs. The proposed legislation is intended to provide additional means of combating this nefarious activity." 1950 U.S.Code Congressional Service, pp. 2953-54.
In reviewing the Congressional intent behind the 1950 amendment of 49 U.S.C. § 782, the Federal District Court, in United States v. One 1972 Datsun, 378 F. Supp. 1200 at page 1205 (D.C.N.H. 1974), stated:
"... [T]he legislative history surrounding the 1950 Amendments to 49 U.S.C. § 782 makes clear that a primary goal of this forfeiture statute is to cripple illegal drug trafficking and narcotics activity. Before the Amendments, vehicles used in trafficking narcotics were not subject to forfeiture unless it could be shown that the narcotic drug was possessed with intent to sell, that it was offered for sale, or that it was actually sold in violation of the tax laws (i.e., without the proper Internal Revenue stamps). 53 Stat. 1291 (1939). This statutory scheme made forfeiture of vehicles regularly used in the operation of illegal narcotics activity impossible in cases involving stolen narcotics, which normally bore proper stamps, and marijuana, the sale of which required the transferee to pay the appropriate tax and affix the proper revenue stamps. The 1950 Amendments broadened the definition of contraband to include stolen narcotics and to allow forfeiture based solely on illegal acquisition or possession, without requiring proof of sale or intent to sell.
.....
"... The legislative history surrounding these Amendments clearly shows that a purpose of vehicle forfeiture in the enforcement of the narcotics laws is to prevent the flow of narcotics by depriving narcotics peddlers of the `operating tools' of their trade, thereby financially incapacitating the illegal narcotics activity. The purpose will not be greatly furthered by forfeiture in this case. The Government has not alleged that claimant uses the Datsun as part of the modus operandi of an ongoing criminal narcotics enterprise, nor has it alleged that the Datsun has been specifically adapted for illicit narcotics activity. Absent such allegations, it is not clear that forfeiture of the vehicle will help to prevent the illegal *301 sale of narcotics any more than forfeiture of any number of claimant's personal effects which facilitate his ability to deal with such commonplace and everyday problems as transportation."
The Legislature having enacted the "Florida Uniform Contraband Transportation Act" with forfeiture provisions identical to those contained in 49 U.S.C. §§ 781, 782, and at the same time declaring that its purpose in doing such was to achieve "uniformity between the laws of Florida and the laws of the United States," we must conclude that the Legislature's purpose in enacting Ch. 73-331, § 12, Laws of Florida, was directed at preventing the transportation of a controlled substance for distribution by authorizing forfeiture of vehicles engaged in such activity. We must also conclude that it was not the legislative intent in enacting Ch. 73-331, § 12, Laws of Florida, to authorize vehicle forfeiture as an instrument to punish citizens for mere possession of controlled substances in a vehicle. Although this construction may conflict with a literal reading of Sections 943.41 through 943.44, Florida Statutes (1975), an interpretation allowing forfeiture for mere possession of a controlled substance while in a vehicle does violence to the expressed intent of the Legislature.
We also base our conclusions on the expressed intent of the National Conference of Commissioners on Uniform State Laws in proposing the Uniform Controlled Substances Act, the act after which Ch. 73-331, § 12, Laws of Florida, was modeled. In their prefatory notes to the Uniform Controlled Substances Act, the Commissioners stated:
"This Uniform Act was drafted to achieve uniformity between the laws of the several States and those of the Federal government. It has been designed to complement the new Federal narcotic and dangerous drug legislation and provide an interlocking trellis of Federal and State law to enable government at all levels to control more effectively the drug abuse problem.
"The exploding drug abuse problem in the past ten years has reached epidemic proportions. No longer is the problem confined to a few major cities or to a particular economic group. Today it encompasses almost every nationality, race, and economic level. It has moved from the major urban areas into the suburban and even rural communities, and has manifested itself in every State in the Union.
"Much of this major increase in drug use and abuse is attributable to the increased mobility of our citizens and their affluence. As modern American society becomes increasingly mobile, drugs clandestinely manufactured or illegally diverted from legitimate channels in one part of a State are easily transported for sale to another part of that State or even to another State. Nowhere is this mobility manifested with greater impact than in the legitimate pharmaceutical industry. The lines of distribution of the products of this major national industry cross in and out of a State innumerable times during the manufacturing or distribution processes. To assure the continued free movement of controlled substances between States, while at the same time securing such States against drug diversion from legitimate sources, it becomes critical to approach not only the control of illicit and legitimate traffic in these substances at the national and international levels, but also to approach this problem at the State and local level on a uniform basis." 9 U.L.A., Prefatory Note, p. 146.
Although the Uniform Act's forfeiture sections were reworded when adopted by Ch. 73-331, § 12, Laws of Florida, the Florida forfeiture statutes proscribe substantially the same conduct as § 505 of the Uniform Act. The purpose of the Uniform Act's forfeiture provisions is set out in the Commissioners' notes following § 505:
"... Effective law enforcement demands that there be a means of confiscating the vehicles and instrumentalities used by drug traffickers in committing violations under this Act. The reasoning *302 is to prevent their use in the commission of subsequent offenses involving transportation or concealment of controlled substances and to deprive the drug trafficker of needed mobility." 9 Uniform Laws Annotated, § 505, p. 338.
The Supreme Court of South Dakota, in the case of State v. One 1972 Pontiac Grand Prix, Two-Door Hardtop, VIN 2K57T2A161214, 242 N.W.2d 660 (S.D. 1976), was asked to decide whether a mere showing of controlled substances in a vehicle at the time it was stopped was sufficient to permit forfeiture of the vehicle pursuant to the South Dakota forfeiture statute. The South Dakota forfeiture statute is worded similarly to Section 943.42, Florida Statutes (1975), and like its Florida counterpart, it is modeled after § 505 of the Uniform Controlled Substances Act. The Court, in One 1972 Pontiac Grand Prix, supra, at page 663, stated:
"... [W]e hold that the Act requires something more than a mere showing that controlled substances were contained in the vehicle at the time it was stopped. SDCL XX-XX-XXX(4) subjects to forfeiture conveyances `used, or intended for use, to transport, or in any manner facilitate the transportation, sale, receipt, possession or concealment' of controlled substances. The instant case involves only possession of marijuana in the defendant automobile. There is nothing in the affidavits to indicate that the movements of the automobile on April 26, 1975, were directly related to the possession of marijuana. The automobile was not used to `facilitate' the possession of marijuana, but was merely incidental to its possession. As the Supreme Court of Utah stated in construing the identical language in State v. One Porsche 2-Dr. I.D. No. XXXXXXXXX, T. PP10026F, etc., 1974, Utah, 526 P.2d 917, 919, `The statute is transportation to accomplish possession, not simply transportation "with" possession.' (emphasis theirs) Here, there is no evidence in the affidavits of a conscious design to transport, sell, receive, possess or conceal a controlled substance in the defendant automobile."
We agree with the Supreme Court of South Dakota and hold that the legislative history of the Uniform Contraband Substances Act and 49 U.S.C., §§ 781, 782, indicates that the target of vehicle forfeitures is the "narcotics peddler" and "drug trafficker." It is obvious that the legislative intent in enacting Ch. 73-331, § 12, Laws of Florida, was directed at the transportation of controlled substances for distribution and not for personal possession and consumption.
The District Court of Appeal, Third District, in In re Forfeiture of 1972 Porsche, 307 So.2d 451 (Fla. 3d DCA 1975), and In re Forfeiture of 1969 Chevrolet Camaro, 334 So.2d 82 (Fla. 3d DCA 1976), cert. den. 342 So.2d 1103 (Fla. 1976), held that the forfeiture statutes in question are intended to apply to those persons "significantly included in a criminal enterprise" and that forfeiture is a drastic remedy "in the absence of a nexus between the illegal drugs found in the car and the furtherance of an illegal drug `operation.'" We find that the Third District's decisions in In re Forfeiture of 1972 Porsche, supra, and In re Forfeiture of 1969 Chevrolet Camaro, supra, comport with the legislative intent in enacting the forfeiture provisions of the "Florida Uniform Contraband Transportation Act."
Accordingly, we hold that vehicle forfeiture pursuant to Sections 943.41 through 943.44, Florida Statutes (1975), is permitted only upon a showing of "a nexus between the illegal drugs found in the car and the furtherance of an illegal drug `operation.'" The trial court's judgment of forfeiture which found that "there is no requirement in the statute that the vehicle be used in an illegal drug operation" is hereby reversed.
It is so ordered.
OVERTON, C.J., and ADKINS, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
BOYD, J., dissents.
NOTES
[1] This Court, in Lissenden, supra, opined at pages 635 to 636:

"The Court has reached the conclusion that the language of the Constitution confers upon a litigant in the trial courts of this state the right to appeal to the Supreme Court an adverse final judgment or decree such as that here involved which on its face passes upon the validity of a state statute, and that when that right is exercised by the litigant then this Court, under the cited provision of the Constitution, has jurisdiction of and should determine the appeal even though in its consideration of the case it is decided that the action of the trial court, in passing upon or expressing an opinion upon the jurisdictional issue of statutory validity, was unnecessary to the disposition of the cause...."