379 So.2d 1300 (1980)
Loren E. HAMM, Appellant,
v.
ST. PETERSBURG BANK & TRUST COMPANY, Appellee.
No. 78-1952.
District Court of Appeal of Florida, Second District.
February 8, 1980.
Joseph P. McNulty of McNulty, Moritz & Dickey, Largo, for appellant.
Stephen C. Chumbris of Harrison, Greene, Mann, Rowe, Stanton & Mastry, St. Petersburg, for appellee.
PER CURIAM.
This is an appeal from a final summary judgment of mortgage foreclosure. The issue is whether one of the notes secured by the mortgage was usurious.
Appellant executed several notes to appellee, each secured by a mortgage on certain real property. He eventually defaulted on the notes, and appellee brought suit to foreclose the mortgage. The largest of the notes is the only one involved in this appeal. In answer to appellee's suit to foreclose, appellant asserted an affirmative defense of usury.
The note in question called for the repayment of $290,000 in two years, together with interest at 9% per annum. The $290,000 principal of the note included a $5,800 *1301 loan charge by the appellee.[1] On motion for summary judgment, appellant contended the loan charge must be treated as additional interest. Appellee, however, contended the loan charge was a legitimate "commitment fee", since appellant would draw the loan funds over an extended period rather than all at once, and would pay interest on only the monies actually received. The lower court ruled that even if the $5,800 loan charge were treated as interest the loan would not be usurious under Section 687.03(3), Florida Statutes. In so doing, the lower court also held that the principle of Wilson v. Conner, 106 Fla. 6, 142 So. 606 (1932) was not applicable in the determination of usury, at least in cases of this kind. We hold that the trial court erred on both points and therefore reverse.
The parties have raised three issues, which we shall consider in turn. (1) Is the $5,800 commitment fee properly characterized as interest? (2) Does resort to the formula in Section 687.03(3) constitute a retroactive application? (3) Does the formula in Section 687.03(3) cause the transaction to be free of usury?

THE COMMITMENT FEE
If the $5,800 commitment fee is not interest, the loan could not be deemed usurious. Appellee contends that the $5,800 was a charge for setting aside the proceeds of the loan, and, like the fee in Financial Federal Savings & Loan Association v. Burleigh House, Inc., 305 So.2d 59 (Fla.3d DCA 1974), was not properly characterized as an interest payment. In Burleigh House, the commitment fee was exacted as part of a construction loan agreement under which portions of the principal sum were periodically released as construction proceeded. Here, the transaction was not a construction loan, and although some of the principal sum remained with the lender, appellant apparently could have demanded his principal at any time. Thus, the justification for a commitment fee may not have been as persuasive in this case. For purposes of our consideration of the correctness of the summary judgment, however, we shall assume, as did the lower court, that the $5,800 reserved from the principal was in actuality a charge for the use of the money, i.e., interest.

RETROACTIVITY
By 1977 the legislature had amended Section 687.03(3) to read in pertinent part as follows:
For the purpose of this chapter, the rate of interest on any loan of money shall be determined and computed upon the assumption that the debt will be paid according to the agreed terms, whether or not said loan is paid or collected by court action prior to the term of said loan, and any payment or property charged, reserved, or taken as an advance or forbearance, which is in the nature of, and taken into account in the calculation of, interest shall be valued as of the date received and shall be spread over the stated term of the loan for the purpose of determining the rate of interest. The spreading of any such advance or forbearance for the purpose of computing [the rate of] interest shall be calculated by first computing the advance or forbearance as a percentage of the total stated amount of the loan. This percentage shall then be divided by the number of years, and fractions thereof, of the loan according to its stated maturity date, without regard to early maturity in the event of default. The resulting annual percentage rate shall then be added to the stated annual percentage rate of interest to produce the effective rate of interest for purposes of this chapter.
As will be noted in our consideration of the third question, the lower court's application of the formula contained in subsection (3) appears to make the loan at hand free of usury. However, the formula did not become a part of subsection (3) until after the *1302 loan was made. Therefore, if the formula does not apply to this transaction, the rule expressed in Wilson would undoubtedly cause the loan to be usurious.
The general rule is that the usury statutes involve remedies and create no substantive rights. Therefore, absent a showing of legislative intent to the contrary, a note will not be considered usurious unless the law states that it is at the time of final adjudication. Tel Service Co., Inc. v. General Capital Corporation, 227 So.2d 667 (Fla. 1969). Here, however, appellant argues that the legislature expressed a clear intent to make the Section 687.03(3) formula apply only to notes executed after its enactment. We do not agree.
Appellant bases his argument on Section 687.03(2)(b), Florida Statutes (1977). Prior to 1976 there was no subsection (2)(b). That year the legislature amended Section 687.03 to provide certain exemptions from the usury laws. Ch. 76-124, Laws of Florida. Section 1 of Chapter 76-124 contained a list of those exemptions and specifically placed them as subsection (2) of Section 687.03. Section 2 of Chapter 76-124 contained a prospective application clause which read as follows:
This act shall apply only to loans or advances of credit made subsequent to the effective date of this act. All present laws shall remain in full force and effect as to loans or advances of credit made prior to the effective date of this act.
The legislature made no statement in Chapter 76-124 as to the placement of Section 2 within Section 687.03, but the Statutory Revision Division of the Joint Legislative Management Committee divided subsection (2) of Section 687.03 into subsections (a) and (b) and placed Section 2 of Chapter 76-124 into subsection (2)(b) of Section 687.03. In 1977, the legislature amended Section 687.03(3) by adding the formula for computing advance interest. That amendment was Chapter 77-374, Laws of Florida, and contained neither a prospective application clause nor a republication of Section 687.03(2)(b).
In view of this legislative history, we think that appellant is incorrect in suggesting that the legislature meant for the prospective application clause in subsection (2)(b) to apply to the formula in subsection (3). Moreover, the legislature's use of the word "act" in subsection (2)(b) convinces us that the legislature meant subsection (2)(b) to apply only to those matters contained in Chapter 76-124 which is now Section 687.03(2)(a) and not to the rest of Section 687.03.[2] Consequently, in deciding whether appellant's loan is usurious, the legal effect of the formula must be considered. As we view this case, however, we don't think this changes anything. We hold the trial court erred in construing the formula now in Section 687.03(3) as changing the requirement of 687.03(1) or the rule in Wilson v. Conner, supra, as we shall more fully discuss hereafter.

APPLICATION OF SUBSECTION (3)
The lower court applied the formula in subsection (3) to free the loan of usury by substituting the foregoing ingredients of the loan into the stated formula as follows:
1. The spreading of any such advance or forbearance for the purpose of computing the rate of interest shall be calculated by first computing the advance or forbearance as a percentage of the total stated amount of the loan.
(a) Advance of $5,800.00.
(b) $5,800.00/$290,000.00 = 2% of total stated amount.
2. This percentage shall then be divided by the number of years, and fractions thereof, of the loan according to its stated maturity date, without regard to early maturity in the event of default.
(a) Two year term.
(b) 2% spread over two years is 1% annual percentage rate.

*1303 3. The resulting annual percentage rate shall then be added to the stated annual percentage rate of interest to produce the effective rate of interest for purposes of this chapter.
(a) The resulting annual percentage rate from paragraph 2(b) above is 1% per year.
(b) The stated annual rate on the note is 9% per year.
(c) The effective rate of interest is 9% + 1% = 10%.
On the other hand, the appellant contends that if subsection (3) should be applied as interpreted by the lower court it would give carte blanche license to unscrupulous lenders to exact usurious interest from needy borrowers. To illustrate, he posits a mortgage loan transaction in which the lender "lends" $10,000.00 represented by a note and mortgage for $10,000 payable in ten years with interest at the rate of 5% per annum. However, $5,000 of the principal represented an additional interest charge. Applying the "formula" of Section 687.03(3) in the form set out above, the interest would be computed as follows:
1. The spreading of any such advance or forbearance for the purposes of computing the rate of interest shall be calculated by first computing the advance or forbearance as a percentage of the total stated amount of the loan.
(a) Advance of $5,000.00.
(b) $5,000.00/$10,000.00 = 50% of total stated amount.
2. This percentage shall then be divided by the number of years, and fractions thereof, of the loan according to its stated maturity date, without regard to early maturity in the event of default.
(a) Ten year term:
(b) 50% spread over ten years is 5% annual percentage rate.
3. The resulting annual percentage rate shall then be added to the stated annual percentage rate of interest to produce the effective rate of interest for purposes of this chapter.
(a) The resulting annual percentage rate from paragraph 2(b) above is 5% per year.
(b) The stated annual rate on the note is 5% per year.
(c) The effective rate of interest is 5% + 5% = 10%.
Under the lower court's rationale, the rate of interest would not be usurious. Yet, at the end of ten years the borrower would have paid the lender $15,000 ($10,000 in stated principal plus $5,000 interest over a ten year period) even though the principal sum actually received by the borrower is only $5,000. Under the lower court's interpretation of the formula the lender would be permitted to charge 20% per annum for the use of his money. We hasten to point out that the provisions of the loan in the instant case were not nearly so exaggerated. Nevertheless, we are concerned by the fact that if we construe the statute in the manner necessary to uphold the lower court, we have also put our stamp of approval on a loan of the type suggested by appellant's hypothetical.[3]
The issue presented in this case is not unique to Florida. An interesting annotation at 57 A.L.R.2d 630 (1958) entitled "Taking or charging interest in advance as usury", points out how the courts in various jurisdictions have treated the issue. Even though the pertinent statutes vary, several principles evolve from a study of these decisions. At the outset, it is clear that where a lender takes points, a bonus, a commission or some other advance charge for a loan, courts consider such charge to be interest for the purpose of determining usury. Second, it appears that courts do not deem the advance retention of the entire amount of interest at the maximum rate usurious in the case of short term loans, particularly in the case of bank loans. Even though this necessarily results in interest on the money *1304 actually received in excess of the maximum rate, courts appear to have sanctioned the practice as a result of long term custom. However, the cases consistently reveal that the maximum length of a short term loan within this rule is one year. See Miller v. First State Bank, 551 S.W.2d 89 (Tex.Civ. App. 1977); Annot., 57 A.L.R.2d 630, 637 (1958).
A third conclusion that the annotation reaches is that the majority of jurisdictions recognize the need to compute interest upon the actual sum received rather than upon the stated principal. E.g., Tanner Development Co. v. Ferguson, 561 S.W.2d 777 (Tex. 1977). The reasoning is evident. The borrower should only have to pay interest upon the amount of money he actually obtains. Finally, most jurisdictions hold that where charges withheld from the principal of the loan, together with the total amount of money to be paid as interest, exceed the highest amount of interest which the lender could have required under the legal maximum for the term of the loan, the loan is usurious. The cases of Long Realty Co. v. Breedin, 175 S.C. 233, 179 S.E. 47 (1935), and McCall v. Herring, 116 Ga. 235, 42 S.E. 468 (1902), provide good illustrations of the computations which are necessary in order to make this determination.
Because the term of the loan in the instant case was two years, we need not be concerned with the principles which may be applicable to short term loans. Cf., Purvis v. Frink, 57 Fla. 519, 49 So. 1023 (1909), which held that taking advance interest at the maximum rate caused a short term loan, albeit not a bank loan, to be usurious.
We believe that the ultimate test for usury is always whether the debtor is required to pay back an amount which exceeds what he actually received plus interest on that amount at the maximum annual rate computed over the length of the loan.
We recognize that our conclusion may appear to ignore the formula contained in subsection (3) of the statute. However, we do not believe that the legislature could have intended for its statute to be read in such a way as would permit the outcome portrayed in the hypothetical.
We believe that subsection (3) can be read in conjunction with subsection (1) to reach a result compatible with our determination. Subsection (1) provides the statutory definition of usury. It has remained essentially the same for many years. See §§ 3104-3106, General Statutes (1906) and Purvis v. Frink, supra. By adding subsection (3) in its present form the legislature did not change the longstanding definition of usury nor convert a normally usurious transaction into an innocent one. Rather, it addressed the problem produced by acceleration where there are charges other than the stated interest which must be included as "interest" for the purpose of usury computations. Where the note runs its full term the spreading is automatically accomplished. There is no requirement, therefore, to apply subsection (3), but if you do the result is the same.
Prior to the amendment of subsection (3) various appellate decisions had established that such additional charges for the use of the lender's money had to be valued as of the date received, which subsection (3) still requires. The case law, however, indicated this forced such charges to be either taken into account solely within the year received or spread over the actual duration of the loan (which in case of a default often resulted in a duration less than the stated term). See the excellent survey of earlier cases in First Mortgage Corp. of Vero Beach v. Stellmon, 170 So.2d 302 (Fla.2d DCA 1964). Apparently the legislature didn't favor either option where there was acceleration. It therefore directed in subsection (3) how such charges shall be treated for usury purposes when acceleration occurs.[4]
*1305 Appellate decisions had also determined that where such charges were added into the loan (provided for up front by increasing the amount of the loan), then the true loan principal upon which interest at the statutory rate may be charged is the face amount of the note less the amount of the loan made to cover such charges. Wilson v. Conner, supra. This sum (the additional charges) must be treated as a part of the total "interest" being charged, and therefore, is not part of the loan principal for usury purposes. In other words, the face amount of the note was not the "actual principal sum received" on which the allowable statutory rate may be charged under subsection (1). Sometimes the face amount of such notes was termed a "fictitious principal". Wilson v. Conner, supra. Subsection (3) in no way addresses or alters this result or treatment of that portion of the loan that is to cover the extra charges "in the nature of interest".
Subsection (3) simply provides the specific manner in which charges "in the nature of interest" are to be taken into account. They are still to be "valued as of the date received", but they must be "spread over the stated term of the loan." However, subsection (3) did not change the rule established by Wilson v. Conner, supra, and its progeny. Usury is still determined by subsection (1), and the maximum payback is specifically limited to the "actual principal sum received, together with interest (thereon) at the rate of 10%[5] (per annum)".
As we read subsection (3) it is simply saying:
Other charges determined to be in the nature of interest shall be spread over the stated term of the loan regardless of acceleration.
The legislature then later added the formula or mathematical method of spreading such charges. Stated interest charges, by their "per annum" character, are still computed over the actual period of the loan whether accelerated or full term.
Applying these principles to the loan transaction involved in this case leads to the following results.
If the charge ($5,800) is treated as "in the nature of interest", then the true amount of the loan is $290,000 less $5,800 or $284,200. Under subsection (1) the lender can only charge or require the debtor to pay back that sum plus 20% (10% per annum for two years) or $341,040. Any amount the debtor is required to pay above this last sum would make the transaction facially usurious.
Now, in fact, the debtor is required (by the terms of the note) to pay back $290,000 plus 9% per annum for two years, or $342,200. Since the loan actually ran its full term, (really longer) we do not have the acceleration problem, and thus, no need to even resort to subsection (3). The transaction is facially usurious by an overcharge of $1,160 above the statutory maximum allowable payback. The total payback of $342,200 actually includes $58,000 in charges for use of $284,200, which computes to an annual rate of 10.204%.
If the formula in subsection (3) is applied the same result is reached. As required by that formula, we first convert the charges other than the stated rate of interest into an annual percentage. The charge, of course, was the $5,800, but since it was included in the note, the lender got 9% per annum interest on it also. For the two-year period that comes to $1,044, to make a total additional charge of $6,844, not $5,800 as assumed by the lower court. Comparing $6,844 to $284,200, the total stated amount of the loan,[6] produces an annual percentage of 1.204%. Add that to the stated interest rate of 9% and the resulting effective rate of interest on the loan of $284,200 is 10.204% per annum.[7]
*1306 A third computation can be used to crosscheck the above results against each other. As noted earlier, the note in question required over its two-year term a payback $1,160 in excess of that permitted by the statute. A simple computation discloses this overpayment exceeds the allowable 10% annual rate by .204% per annum. The point is that however you compute it, and whichever subsection is utilized, the result is precisely the same, which is as it should be.
Since the loan was facially usurious, it was error to conclude as a matter of law that usury had not occurred. Of course, the determination of usury also requires proof of intent, so whether or not this transaction was actually usurious remains an issue which must be determined at trial. Dixon v. Sharp, 276 So.2d 817 (Fla. 1973).
We reverse the summary judgment with respect to the $290,000 note and mortgage, and remand the case for further proceedings in accordance with the principles expressed herein. Among the issues to be addressed at trial are the true nature of the $5,800 charge, that is whether or not it was truly "in the nature of interest" and, if so, whether the lender made the loan with the requisite usurious intent.
GRIMES, C.J., and HOBSON and OTT, JJ., concur.
NOTES
[1] There were other loan expenses, but they are not material to this appeal since they were no charges for the use of the money.
[2] But see Sailboat Apartment Corp. v. Chase Manhattan Mortgage & Realty Trust, 363 So.2d 564 (Fla.3d DCA 1978), wherein our sister court stated the opposite result in dictum without discussion.
[3] One might suggest that we ought not be concerned over a loan of the kind outlined in the hypothetical because no borrower would ever be so foolish as to accept its terms. Yet, the very purpose of the usury laws is to protect a hapless borrower from entering into an unconscionable loan agreement because of economic duress.
[4] This subsection also serves to specifically reject the contention often made that courts should treat the full amount of advance interest as a charge which must be taken into account in the first year. E.g., Montgomery Federal Savings & Loan Assn. v. Baer, 308 A.2d 768 (D.C.App. 1973).
[5] Ten percent in Section 687.03(1), Florida Statutes at the time of this case; 18% at the time of this writing.
[6] Stated amount of the loan should not be equated with "face amount of the note", but rather with "actual principal sum received".
[7] The trial court calculated a rate of only 10% by using the stated amount of the note and only $5,800 of the additional charges.