414 So.2d 1071 (1982)
ST. PETERSBURG BANK & TRUST CO., Petitioner,
v.
Loren E. HAMM, Respondent.
No. 58809.
Supreme Court of Florida.
May 13, 1982.
*1072 Michael J. Keane of Greene, Mann, Rowe, Stanton, Mastry & Burton, St. Petersburg, for petitioner.
Joseph P. McNulty of McNulty, Moritz, Pecarek & Dickey, Largo, for respondent.
Jerry B. Crockett and Vance E. Salter of Steel, Hector & Davis, Miami, for Mortgage Bankers Ass'n of Florida, amicus curiae.
ADKINS, Acting Chief Justice.
This cause is before us because of a conflict between the Second District Court of Appeal's decision below, Hamm v. St. Petersburg Bank & Trust Co., 379 So.2d 1300 (Fla. 2d DCA 1979), and Financial Federal Savings & Loan Association v. Burleigh House, Inc., 305 So.2d 59 (Fla. 3d DCA 1974), cert. discharged, 336 So.2d 1145 (Fla. 1976), cert. denied, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
At issue in the instant case is the largest of four notes executed by respondent, Hamm, and secured by a mortgage. The note principal, to be repaid at a 9 per cent annual interest rate in two years, was $290,000. In addition, respondent was initially required to pay a loan charge of $5,800. Respondent defaulted on the note and petitioner sought to foreclose on the mortgage. In the foreclosure proceedings, respondent alleged the affirmative defense of usury claiming the effective rate of interest charged exceeded the 10 per cent usury cap then in effect. The trial court applied section 687.03(3), Florida Statutes (1977), the spreading statute, and found that the note was not usurious.
On appeal, the Second District Court of Appeal at first affirmed the trial court. The court then reheard the case and reversed both its own earlier decision and that of the trial court. The basis for this change of heart was an extreme hypothetical, involving a 50 percent advance, presented by respondent and the court's belief that the legislature could not have intended that hypothetical. 379 So.2d at 1303. Thus, the court equated "stated amount of the loan" with "actual principal sum received" in applying section 687.03(3). Also, the court assumed the loan fee was interest and then added the interest to be paid on the loan fee to the fee in making the usury computations pursuant to section 687.03(3). The district court's computations follow:
1. The spreading of any such advance or forbearance for the purpose of computing the rate of interest shall be calculated by first computing the advance or forbearance as a percentage of the total stated amount of the loan. § 687.03(3), Fla. Stat.

 a) Advance of 5800
 b) Plus interest of 9%
 for two years 1044
 ____
 Total additional charges 6844
 c) 6844/284,000 = 2.408

2. This percentage shall then be divided by the number of years, and fractions thereof, of the loan according to its *1073 stated maturity date, without regard to early maturity in the event of default. Id.

a) Two-year term
b) 2.408 spread over two years is 1.204 annual percentage rate.
3. The resulting annual percentage rate shall then be added to the stated annual percentage rate of interest purposes of this chapter. Id.

a) The resulting annual percentage rate from paragraph 2(b) above is 1.204% per year.
b) The stated annual rate on the note is 9% per year.
c) The effective rate of interest is 9% + 1.204% = 10.204%.
We quash. The decision of the second district constitutes a judicial rewrite of section 687.03 and deviates from the plain meaning of the statute. We hold that section 687.03(3) is clear on its face and should be applied in the following manner:
1. The spreading of any such advance or forbearance for the purpose of computing the rate of interest shall be calculated by first computing the advance or forbearance as a percentage of the total stated amount of the loan. Id.

a) Advance of $5,800.00.
b) $5,800.00/$290,000.00 = 2% of total stated amount.
2. This percentage rate shall then be divided by the number of years, and fractions thereof, of the loan according to its stated maturity date, without regard to early maturity in the event of default. Id.

a) Two year term.
b) 2% spread over two years is 1% annual percentage rate.
3. The resulting annual percentage rate shall then be added to the stated annual percentage rate of interest to produce the effective rate of interest for purposes of this chapter. Id.

a) The resulting annual percentage rate from paragraph 2(b) above is 1% per year.
b) The stated annual rate on the note is 9% per year.
c) The effective rate of interest is 9% + 1% = 10%.
While legislative intent controls construction of statutes in Florida, Griffis v. State, 356 So.2d 297 (Fla. 1978), that intent is determined primarily from the language of the statute. S.R.G. Corp. v. Department of Revenue, 365 So.2d 687 (Fla. 1978). The plain meaning of the statutory language is the first consideration.
The second district's inability to "believe that the legislature could have intended for its statute to be read in such a way as would permit the outcome portrayed in the hypothetical" is insufficient to overcome the plain meaning of the statutory language. This case does not present the overwhelming evidence of a contrary intent expressed in Griffis. The state act involved in Griffis, section 943.44, Florida Statutes (1975), was enacted to supplement a federal act. The act had also been modeled on the Uniform Controlled Substances Act. Thus, the court had the legislative history of the federal act and the notes of the uniform act to consider in determining a legislative intent contrary to the statutory language.
Moreover, "[e]ven where a court is convinced that the legislature really meant and intended something not expressed in the phraseology of the act, it will not deem itself authorized to depart from the plain meaning of the language which is free from ambiguity." Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918). The question of whether "stated amount of the loan" should be read as "actual principal sum received" or stated amount of the note provides potential in section 687.03(3) for the ambiguity necessary to depart from the plain meaning. However, no ambiguity exists. In section 687.03(3), the legislature uses the term "stated" four times when referring to the loan. In each instance, it is clear that the statutory language refers to the particular term stated on the face of the note. Thus, contrary to the facts in Van Pelt, the language has a definite meaning and the court should have used the face amount of the note ($290,000), rather than the actual *1074 sum received ($290,000-$5,800 = $284,200), in applying section 687.03(3).
In addition, the court increased the amount of the "advance or forbearance" by the amount of interest to be paid on that advance over the life of the loan in contravention of the statutory spreading formula. Section 687.03(3) does not contemplate this additional step when determining the advance as a percentage of the stated amount of the loan. Interest paid on an advance is a charge for the use of funds to make the advance; it is not part of the advance.
"The determination of the maximum amount of interest which may be charged for the use of money loaned is within the police power of the state, and the details of the legislation and exceptions to be made rest within the discretion of the state legislature." Cesary v. Second National Bank, 369 So.2d 917 (Fla. 1979) (citation omitted). It is up to the legislature to determine how best to protect the unwary or foolish consumer from loans such as the hypothetical, a major concern of the court below. 379 So.2d at 1303, n. 3. The legislature believes it has protected the consumer through enactment of chapter 687. In point of fact the legislature may feel that the consumer needs no additional protection because the consumer has other defenses available. The second district alludes to another  the common law defense of unconscionability. Id. It is the responsibility of the legislature to correct the asserted problem presented by the district court hypothetical.
Section 687.03(3) is also attacked on the ground that it is inconsistent both with the general definition of usury in section 687.03(1) and with Wilson v. Conner, 106 Fla. 6, 142 So. 606 (1932). The spreading statute may be inconsistent with Wilson. Nevertheless, usury is a creature of statute, Spinney v. Winter Park Building & Loan, 120 Fla. 453, 162 So. 899 (1935), and the usury statute must control over prior case law. Thus, Wilson has no vitality in cases where section 687.03(3) applies.
Section 687.03(1) and section 687.03(3) are not inconsistent. The "[e]xcept as provided herein ..." language contemplates that other provisions apply. Section 687.03(3) supercedes when an advance is required in a loan transaction. When the actual principal sum received equals the stated amount of the loan, however, section 687.03(1) remains in force. Enactment of the spreading statute merely limited the scope of section 687.03(1); it did not remove the provision's effectiveness.
The Second District Court of Appeal has also created some uncertainty in the area of commitment fees. The court's summary treatment of the commitment fee issue and subsequent assumption that the $5800 constituted interest raised doubts about the general applicability of Financial Federal Savings & Loan Association v. Burleigh House, 305 So.2d 59 (Fla. 3d DCA 1974), cert. discharged, 336 So.2d 1145 (Fla. 1976), cert. denied, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977).
Burleigh House stands for the proposition that a commitment fee is "consideration for the lender's ... funds which are committed to be loaned in the future" rather than additional interest. 305 So.2d at 63. The second district attempts to distinguish the Burleigh House rule on the basis of the type of loan involved, thereby limiting Burleigh House to construction loans. This limitation is not imposed by Burleigh House.
Respondent attempts to limit Burleigh House to two loan transactions, construction and permanent lending transactions being a classic example. This distinction, however, could not have been intended. The policies supporting use of a commitment fee may be applicable in either a one or two loan transaction. In the one transaction open line of credit situation, the lender must maintain sufficient funds to pay the debtor at his request up to the amount agreed upon at all times. There is no guarantee that the debtor will request any or all of those funds. Thus, the lender may receive no compensation for funds which were earmarked at the outset of the transaction for future use at the debtor's discretion. This does not differ materially from the construction/permanent lending arrangement in Burleigh House. In either *1075 case the lender is entitled to compensation for funds held overtime for the debtor's benefit.
Moreover, both arrangements contemplate the same opportunity costs. In periods of rapidly increasing rates, loan commitments and lines of credit tie the lender to a potentially lower interest rate. In addition, the lender is prevented from accepting more attractive offers during the period of commitment. The lender is also entitled to compensation for these costs.
We, therefore, uphold the Burleigh House rule and find that its application is not limited either by the type of loan or the number of transactions contemplated.
The decision of the district court of appeal is quashed and the cause is remanded with instructions to affirm the judgment of the trial court.
BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.