523 So.2d 636 (1988)
The STATE of Florida, Appellant,
v.
Ronald L. BOOK, Appellee.
Nos. 86-2857, 86-3205.
District Court of Appeal of Florida, Third District.
March 3, 1988.
Rehearing Denied May 11, 1988.
Robert A. Butterworth, Atty. Gen., Janet Reno, State Atty. and Richard L. Shiffrin and Lawrence D. LaVecchio, Asst. State Attys., for appellant.
Bierman, Shohat & Loewy and Donald I. Bierman, Sonnett, Sale & Kuehne and Benedict P. Kuehne, Miami, for appellee.
Before SCHWARTZ, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
PER CURIAM.
This is an appeal by the State of Florida from orders dismissing certain counts of an information against Ronald Book.[1] Book was charged with several criminal counts *637 relating to false declarations of loss under his automobile insurance policy. On December 10, 1985, his Mercedes automobile was stolen from Miami International Airport. He had originally purchased the automobile for $20,500 trade-in and $23,500 cash for a total purchase price of $44,000 (invoice # 00305).[2] The vehicle was a "grey market" automobile, one that is manufactured for sale outside the United States and fails to meet the federal EPA standards. Upon importation into this country, the vehicle must be modified to meet federal standards. On December 11, 1985, Book made a claim for the theft to Nationwide Mutual Fire Insurance Company under his automobile insurance policy. In a telephone conversation with Nationwide's adjuster, which was tape-recorded with Book's permission, Book estimated the purchase price value of the stolen automobile at $57,000. Subsequently, Book filed with Nationwide an "Affidavit of Vehicle Theft," which stated that the purchase price was $50,000. This affidavit was signed by Book and notarized by his office secretary. In January, 1986, Nationwide received from Rennsport Autohaus, Inc., pursuant to Book's request, invoice # 00307, detailing the original purchase price as $53,000, not $44,000, which was the actual purchase price reflected in the original invoice # 00305. Nationwide settled the claim for $54,500, pursuant to invoice # 00307. Book thereafter accepted $48,010.25 because he had purchased a less expensive automobile.
The State charged Book with Second Degree Grand Theft, three counts of Filing a False and Fraudulent Insurance Claim, and Perjury in an Unofficial Proceeding. After the trial court dismissed the perjury count, the State filed a superseding information, charging Book with uttering a false document. The trial court dismissed Count IV, filing a false and fraudulent insurance claim. The trial court then dismissed the grand theft, uttering of a forged instrument, and remaining insurance fraud counts. These dismissal orders were appealed by the state. Under the appeals as consolidated, we are reviewing the validity of these five counts. In so doing we must be ever cognizant that,
"The motion to dismiss in criminal practice is similar in many respects to the summary judgment in civil proceedings. State v. J.T.S., 373 So.2d 418 (Fla. 2d DCA 1979). The motion should be granted only where the most favorable construction of the facts to the state does not establish a prima facie case of guilt. State v. Smith, 348 So.2d 637 (Fla.2d DCA 1977). If there is any evidence upon which a jury of reasonable men could convict, the court should deny the motion. State v. Hires, 372 So.2d 183 (Fla.2d DCA 1979)."[3]
State v. McCray, 387 So.2d 559, 561 (Fla.2d DCA 1980).
As to Count I, Grand Theft; Count II, Fraudulent Insurance Claim by Submission of Invoice No. 00307; and Count III, Fraudulent Insurance Claim by the oral pronouncement that the vehicle cost $50,000, the principal question raised is the materiality of the actual purchase price of the defendant's automobile. The state contends that the purchase price paid for an automobile which is not readily found in the market place is relevant and material to the determination of the fair market value *638 on the date of the theft, three weeks after the purchase. For purposes of argument, the defendant concedes the falsity of certain statements made to representatives of the insurance company and of the documents which he caused to be supplied to the insurance company. The defendant urges that, notwithstanding the false representations as to the purchase price, such representations were as a matter of law immaterial. We disagree.
It is a reasonable inference that, but for the false statement as to price, the insurance company would not have settled the defendant's claim for the amount that it did. In determining what a willing buyer will pay a willing seller for an article, evidence of comparable sales at the same time for a similar article is appropriately considered in determining the fair market value. See Jacksonville, Tampa & Key West Ry. v. Peninsular Land, Transp. & Mfg. Co., 27 Fla. 1, 9 So. 661 (1891); 17 Fla.Jur. 2d Damages § 67 (1980). What an insured buyer pays for a somewhat unique item indicates what he believes is the item's fair market value and the buyer's representation to his insurance carrier that, immediately prior to the item's theft, he had, in fact, paid a higher price for the item would reasonably tend to influence the insurance carrier's settlement of the claim. Obviously, the defendant believed that an inflated purchase price would enable him to secure a more desirable settlement.
The defendant further contends that, as to Count I (Grand Theft), the undisputed evidence fails to show that he intended to deprive another of the right to property or to appropriate another's property to his own use. He contends he was seeking only actual cash value or replacement of his stolen vehicle. However, intent or state of mind is not an issue to be decided on a motion to dismiss under Rule 3.190(c)(4), Florida Rules of Criminal Procedure. See State v. McCray, supra; State v. Rogers, 386 So.2d 278 (Fla.2d DCA 1980).
Therefore, the order dismissing Counts I, II and III of the information is hereby reversed and said counts are ordered reinstated.
We also find erroneous the dismissal of Count IV, charging a Fraudulent Insurance Claim by the filing of a document titled Affidavit of Vehicle Theft containing false information. The basis of the dismissal was that the Affidavit of Vehicle Theft was a claim form and that because the affidavit did not include the required statutory warning and had not been approved by the Department of Insurance, it failed to meet the statutory prerequisites to prosecution under Section 817.234(1)(b), Florida Statutes (1985). We disagree for two reasons. First, we find that the Affidavit of Vehicle Theft does not constitute a claim form within the meaning of Section 817.234(1)(b), Florida Statutes (1985). As conceded by the defendant, the claim herein was initiated by a recorded telephone call. Thereafter, pursuant to the terms of his policy, Book was required to submit additional documentation of the claim. Not all documentation submitted in support of a claim needs to contain the statutory warning. Section 817.234(6), Florida Statutes (1985), recognizes several documents that can be filed in support of a claim and that reasonably will not contain the statutory warning. For example, the insurer in the case sub judice does not utilize a formal claim form, but relies upon telephonic notification; therefore, we hold that the Affidavit of Vehicle Theft filed in this case does not constitute a claim form within the meaning of Section 817.234(1)(b), Florida Statutes (1985).
We also find that the warning provision of Section 817.234(1)(b), Florida Statutes (1985), is not a prerequisite to a charge of filing a false and fraudulent insurance claim because we conclude that the provision in Section 817.234(1)(b) is directory rather than mandatory. While the word "shall" in a statute is normally mandatory in nature, the interpretation of the word "shall" depends upon the context in which it is found and the intention of the Legislature as expressed in the statute. See S.R. v. State, 346 So.2d 1018 (Fla. 1977); White v. Means, 280 So.2d 20 (Fla. 1st DCA 1973). Clearly, the intent of the Legislature in enacting Section 817.234 was to make the *639 filing of a false or fraudulent insurance claim a crime. To now hold, without legislative sanction, that a private entity's failure to include a statutory warning in a claim form or other document constitutes a defense to that crime would lead to an unjust, absurd and unreasonable consequence which this court cannot permit. To do so would emasculate the statute under the facts of the instant case and thereby frustrate the obvious legislative intent. See Griffis v. State, 356 So.2d 297 (Fla. 1978); Speights v. State, 414 So.2d 574 (Fla. 1st DCA 1982); State v. Nunez, 368 So.2d 422 (Fla. 3d DCA 1979); State ex rel. Washington v. Rivkind, 350 So.2d 575 (Fla. 3d DCA 1977). Accordingly, we reverse the order dismissing Count IV of the information and direct that Count IV be reinstated.
Finally, we hold that the trial court erred in dismissing Count V, charging the uttering of a false document. Pursuant to Section 831.02, Florida Statutes (1985), the elements of the offense of uttering a false or forged instrument are knowledge on the part of the accused that the instrument is false and the intent to injure or defraud another by the assertion that the instrument is true. See Harrell v. State, 79 Fla. 220, 83 So. 922 (1920); Clark v. State, 114 So.2d 197 (Fla. 1st DCA 1959). At the time of uttering or publishing the Affidavit of Vehicle Theft,[4] the defendant had knowledge that it was falsely made and that it was being uttered for the purpose of obtaining money from his insurer; certainly the jury could find that Book must have known that, contrary to the statement in the affidavit, he had not been duly sworn prior to execution of the document, and that therefore he falsely made the document by acknowledging that he had been. Notwithstanding this knowledge and the knowledge of the falsity contained in the document (the inflated purchase price), he published the document to his insurer as true in an attempt to gain payment. We hold these facts to sufficiently allege a crime under the provisions of Section 831.02, Florida Statutes (1985). Therefore, the order dismissing Count V of the information is hereby reversed and Count V is order reinstated.
In sum, the orders dismissing Counts I, II, III, IV and V are hereby reversed and the cause is remanded to the trial court with directions to reinstate them.[5]
Reversed and remanded with directions.
NOTES
[1] These followed a number of motions to dismiss pursuant to Rule 3.190(c)(4), Florida Rules of Criminal Procedure, some of which were met with demurrers, and others of which were met with specific factual traverses.
[2] The facts recited in this opinion are drawn from the defendant's sworn motion to dismiss, the state's averment of additional facts, and the lower court's order dismissing the charges and are to be taken only in the context of ruling on the pretrial motion to dismiss. We express no view as to what will be proved at a trial of this cause.
[3] The purpose of a motion under Rule 3.190(c)(4), Florida Rules of Criminal Procedure, is to determine whether or not, under the undisputed facts, the state has established a prima facie case of guilt. It is not designed to create a trial by affidavit or substitute for a trial on the merits. If the affidavits and depositions, filed in support of or in opposition to the motion, create material disputed facts, it is not proper for the trial court to determine factual issues, weigh conflicting evidence, or judge the credibility of witnesses. See State v. Fetherolf, 388 So.2d 38 (Fla. 5th DCA 1980); State v. Huggins, 368 So.2d 119 (Fla. 1st DCA 1979); Ellis v. State, 346 So.2d 1044 (Fla. 1st DCA 1977); State v. Giesy, 243 So.2d 635 (Fla. 4th DCA 1971).
[4] As previously held, the defendant was required to file additional documentation of his claim in the form of an Affidavit of Vehicle Theft, sworn to and signed in the presence of a notary. Book filed an "Affidavit of Vehicle Theft" that contained false information as to the purchase price of the vehicle. On its face, the affidavit appears to have been duly executed. However, Book claims that, in fact, he had not taken an oath when he executed the document and that the document had not been signed or sworn to by him in the presence of the notary public who certified the document.
[5] We note that, because it granted the defendant's motion to dismiss, the trial court declined to rule on the defendant's motions alleging multiplicity of counts and prosecutorial misconduct. Nothing contained herein should be construed to prohibit the trial court from ruling on those motions upon return of the case.